# SEEBERGER *v.* SCHLESINGER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 274.   Argued and submitted March 13, 1894. — Decided April 9, 1894.

Chinese goat skins, tanned with the hair on, so that the skin is soft and pliant, should not be classified for the assessment of customs duties as "rugs," under the act of March 3, 1883, c. 121, 22 Stat. 488.

The commercial designation of an imported article is not a matter of which courts can take judicial notice, but is a fact to be proved by evidence.

When the court below makes special findings, no exception is necessary to raise the question whether the facts support the judgment.

Shell-covered opera glasses, composed of shell, metal, and glass, imported under the tariff act of March 3, 1883, c. 121, were subject to be classed as manufactures composed in part of metal, under Schedule C, and were dutiable at 45 per cent.

THIS was an action by the firm of Schlesinger & Mayer against the collector of the port of Chicago to recover duties paid upon certain importations of Chinese goat skins and pearl opera glasses, entered for consumption at the custom-house at Chicago.

The case was tried by the court, without a jury.   The court made a special finding of facts, and awarded the plaintiff judgment for $113.60 for excess duties upon the goat skins, and $6.60 upon the opera glasses.

Defendant sued out a writ of error from this court.

*Mr. Assistant Attorney General Whitney* for plaintiff in error.

*Mr. Percy L. Shuman* and *Mr. W. Wickham Smith* for defendants in error submitted on their brief.

Mr. Justice Brown delivered the opinion of the court.

This case involves the proper classification for duties under the act of March 3, 1883, c. 121, 22 Stat. 488, of Chinese goat skins and pearl opera glasses.

1. In reference to the goat skins, the court found that the plaintiffs imported and entered at the custom-house in the port and district of Chicago certain Chinese goat skins, dressed and finished, upon which the plaintiffs paid a duty of 40 per cent ad valorem, as "rugs" not otherwise provided for, classified and assessed by the defendant collector, under Schedule K, act of March 3, 1883, namely : " Carpets and carpetings of wool, flax, or cotton . . . not otherwise herein specified, forty per centum ad valorem ; and mats, rugs . . . shall be subjected to the rate of duty herein imposed on carpets." Plaintiffs paid these duties under protest, and appealed to the Secretary of the Treasury, claiming that such merchandise should be assessed at a duty of 20 per cent ad valorem under Schedule N, "Sundries," as "skins dressed and finished, of all kinds, not specially enumerated." The court further found "that the goods in question were described in the invoice as 'Chinese goat skins;' that they are tanned with the hair on so that the skin is soft and pliant ; that none of the skins are whole or entire, but that the articles imported are made of pieces of skins tanned as aforesaid, loosely sewed together so as to make large parallelogram-shaped pieces about 18 inches wide by 36 to 48 inches long ; that they are advertised and sold to some extent for floor rugs, and are sometimes lined and trimmed for sleigh and carriage robes ; that they are not always used in the shape imported, but are sometimes cut apart at the seams, or cut into strips and dyed, and used for trimming lap robes, overcoats," etc.

We agree with the court below in holding that the skins in question were improperly classified as "rugs." Schedule K of the act of March 3, 1883, (22 Stat. page 508,) is entitled "Wool and Woollens," and, until the clause in question is reached, provides for duties upon various classes of wools, woollen goods, clothing, carpets, including, as an analogous material, the hair of the alpaca, goat, and other like animals, with fabrics made of such hair, or mixtures of the same with wool. The schedule then imposes a duty of six cents per yard upon "hemp or jute carpeting," and then provides that "carpets and carpetings of wool, flax, or cotton, or parts of either or other material, not otherwise herein specified, forty per centum ad valorem ; and mats, rugs, screens, covers, hassocks, -bedsides, and other portions of carpets or carpetings, shall be subjected to the rate of duty herein imposed on carpets or carpetings of like character or description ; and the duty on all other mats not exclusively of vegetable material, screens, hassocks, and rugs, shall be forty per centum ad valorem." There is no mention here of skins, or of hair attached to the skin ; and while, if the articles in question were used exclusively or principally as rugs, they might be included within that designation, the fact that they were of the size of small rugs, and were advertised and sold to some extent for that purpose, would not be sufficient, if a more specific designation could be found. It not only appears that they were sometimes lined and trimmed for sleigh and carriage robes, but that they were not always used in the shapes imported, and were sometimes cut apart at the seams, and cut into strips and dyed and used for trimming garments. In fact, their uses were so various that they afford a very unsatisfactory criterion for their classification.

The plaintiffs took the ground in their protest, and in this they were sustained by the court below, that they should be classified under Schedule N, "Sundries.— Skins dressed and finished." The clause relied upon is one providing for the assessment of leathers, and reads as follows (page 513) :

"Leather, bend or belting leather, and Spanish or other sole leather, and leather not specially enumerated or provided for in this act, fifteen per centum ad valorem.

"Calfskins, tanned, or tanned and dressed, and dressed upper leather of all other kinds, and skins dressed and finished, of all kinds, not specially enumerated or provided for in this act, and skins of morocco, finished, twenty per centum ad valorem.

"Skins for morocco, tanned, but unfinished, ten per centum ad valorem.

"All manufactures and articles of leather, or of which leather shall be a component part, not specially enumerated or provided for in this act, thirty per centum ad valorem."

It is insisted, however, that the item of "skins dressed and finished," read in connection with the residue of the clause, and particularly with "skins for morocco, tanned, but unfinished," indicates that, by "skins dressed and finished" were meant skins dressed and finished in the similitude of leather; that is, by having the hair removed; and that a reference to the corresponding clause of the Revised Statutes, section 2504, page 477, shows still more clearly that the clause in question was not intended to include skins with the hair on:

"Leather. — Bend or belting-leather, and Spanish or other sole leather : fifteen per centum ad valorem ; calfskins, tanned, or tanned and dressed : twenty-five per centum ad valorem ; upper leather of all other kinds, and skins dressed and finished of all kinds, not otherwise provided for : twenty per centum ad valorem ; skins for morocco, tanned, but unfinished : ten per centum ad valorem ; manufactures and articles of leather, or of which leather shall be a component part, not otherwise provided for, thirty-five per centum ad valorem.

"Leather and skins japanned, patent, or enameled : thirty-five per centum ad valorem.

"All leather and skins, tanned, not otherwise provided for : twenty-five per centum ad valorem."

In this court, it is further claimed by the collector that while none of the clauses referred to include skins of animals with the hair on *eo nomine*, the goat skins in question fall either directly or under the similitude clause within the description of "dressed furs on the skin," page 513, and were dutiable at twenty per centum ad valorem ; that although goat skins are

not ordinarily classified as furs — a term usually reserved for the short, fine hair of certain animals, whose skins are largely used for clothing; yet in a commercial sense furs have been regarded as including other skins, perhaps more properly designated by the term " peltry ; " and that within their commercial designation is included the covering of all animals whose skin is used either for warmth or ornament, with the hair on.  In this connection we are cited to the case of *Astor* v. *Union Insurance Co.*, 7 Cowen, 202, in which an " Invoice of furs " was described as consisting of bear and raccoon skins, opossum, deer, fine fisher, cross fox, marten, white raccoon, wild cat, wolf, wolverine, panther, and cub skins.  In this case evidence was held to be properly admitted showing that, by the usage of the trade, skins valuable chiefly on account of the fur were called *fur*, while *skins* was a term appropriated to those which were valuable chiefly for the *skin*, by which we understand the skin with the hair removed.  Our attention is also called to the Encyclopædia Britannica, which, in treating of the subject of fur, includes within that designation the skins of the bear, buffalo, lamb, lion, tiger, and wolf, although perhaps none of these would fall within the popular definition of furs.

The commercial designation of an article, however, is not a matter of which courts can take judicial notice, but is a fact to be proved like any other — by evidence.  In this case there is no finding as to the commercial meaning of the word " furs," and no testimony whatever upon the subject, for clearly neither the opinion in the *Astor case* nor the extract from the encyclopedia can be considered as legitimate testimony.  In short, the case was tried wholly upon the theory that the goat skins in controversy were either " rugs " or " skins dressed and finished."  The collector, therefore, is in no position, as the case is now presented, to ask for a reversal upon this ground; but as the case must be reversed upon another ground, both parties will be at liberty upon a new trial to introduce testimony upon the question of commercial usage.

2.  With reference to the opera glasses, the court found that the plaintiffs had imported certain shell-covered opera

glasses, composed of shell, metal, and glass, upon which said merchandise the plaintiffs paid a duty of 45 per cent ad valorem, assessed by the defendant collector as "manufactured articles, composed in part of metal," under Schedule C, act of March 3, 1883; that plaintiffs protested and appealed to the Secretary of the Treasury, claiming that these opera glasses should be assessed a duty of 25 per cent ad valorem under Schedule N, "Sundries," as "shells, whole or parts of, manufactured, of every description," and under section 2499, as "articles composed of shell, metal, and glass in which the shell is the component of chief value."

The court further found from the proofs that the "said opera glasses are composed of silver or nickel-plated metal tubes, fitted to slide within each other, and held together by a metal framework or connections, said tubes containing glass lenses properly fitted therein, and that said tubes are enclosed in a cover of polished mother-of-pearl; that the shell, when manufactured, or brought to the proper shape for such cover and properly polished, costs more than the glass lenses and metal tubes and frame when finished and ready to be combined with said pearl to make a complete opera glass."

In this connection, our attention is called to the fact that, while an exception was taken to the ruling of the court with respect to goat skins, none was taken to its rulings with respect to the opera glasses. This, however, is immaterial, no exception being necessary, in case of special findings by the court, to raise the question whether the facts found support the judgment. *St. Louis* v. *Ferry Co.*, 11 Wall. 423, 428; *Tyng* v. *Grinnell*, 92 U. S. 467, 469; *Insurance Co.* v. *Boon*, 95 U. S. 117, 125; *Allen* v. *St. Louis Bank*, 120 U. S. 20, 30.

The court below was of opinion that, taking the designation of "shells, whole or parts of, manufactured," found in Schedule N, page 514, in connection with the last clause of Rev. Stat. § 2499, that "on all articles manufactured from two or more materials the duty shall be assessed at the highest rates at which the component material of chief value be chargeable, these opera glasses should have been classified as manufactured shells, inasmuch as it appeared that the shell, when manu-

factured or brought to the proper shape for such covering and properly polished, costs more than the glass lenses and metal tubes and framework, when finished ready to be combined with said material to make a complete opera glass." We held this method of computation to be correct in *Seeberger* v. *Hardy,* 150 U. S. 420, but the question of the proper classification of the opera glasses was not considered in that case.

We think the court was in error in holding that the articles in question were shells, whole or parts of, manufactured, as this clause was obviously intended to apply to articles made entirely, or nearly so, of shell, such as combs, bracelets, chains, and lorgnons, and not to articles of which shell was a mere component, though perhaps, as in this case, the most valuable part. Nor are we satisfied that they should be classed as "articles manufactured from two or more materials," in which case, by Rev. Stat. § 2499, as amended by the act of 1883, (22 Stat. 491,) duty should be assessed at the highest rate at which the component material of chief value may be chargeable. In view of the more specific designation in Schedule C, page 501, of "manufactures, articles, or wares not specially enumerated or provided for in this act, composed wholly or in part of . . . metal," and in view of the fact that, while the metal is not the component of chief value, it is a substantial part of the finished glass, and the framework upon which the lenses and shell are mounted, we think these articles should be classed as manufactures of metal. We do not wish to be understood as holding that, if the metal be a mere incident or an immaterial part of the completed article, as, for instance, the screws or knobs upon an article of household furniture, or the buttons upon an article of clothing, such articles should be classified as manufactures in part of metal; but where, as in this case, they form a necessary and substantial part of the article, we think this clause should determine their classification. Particularly is this so in view of the fact that opera glasses are frequently made of glass and metal alone, or with an outer covering of leather, which would form an inconsiderable part of the total expense. It would be obviously unjust that these cheaper glasses should pay a

duty of forty-five per cent while the more expensive glasses with shell coverings are dutiable only as manufactures of shell at twenty-five per cent.

Practically the same question was before this court in *Solomon* v. *Arthur*, 102 U. S. 208, in which the question arose as to the proper classification of goods composed of silk and cotton. The collector laid a duty upon them as " manufactures of silk or of which silk is the component part of chief value, not otherwise provided for; " and the question was whether they were " otherwise provided for " as " manufactures composed of mixed materials, in part of cotton, silk, wool or worsted, or flax." The goods in question were confessedly embraced in both descriptions; but as " manufactures made of mixed materials, in part of cotton, silk," etc., was more general than that of " manufactures in which silk is the component part of chief value," the two phrases were interpreted to read as follows : " Goods made of mixed materials, cotton, silk, etc., shall pay a duty of thirty-five per cent; *but if* silk is the component part of chief value, they shall pay a duty of fifty per cent." So by analogy we may read the two clauses in question in this case as follows : " On all articles manufactured from two or more materials the duty shall be assessed at the highest rates at which the component material of chief value may be chargeable, provided that if such articles are composed wholly or in part of metal, they shall be dutiable at forty-five per cent." So in *Hartranft* v. *Meyer*, 135 U. S. 237, the question was whether cloth composed partly of silk, partly of cotton, and partly of wool, silk being the component material of chief value, should be classified as " manufactures of wool of every description, made wholly or in part of wool, not specially enumerated or provided for in this act," or as " goods, wares, and merchandise, not specially enumerated or provided for in this act, made of silk, or of which silk is the component material of chief value." It was held that, as the latter clause was narrower and more limited than the other, they should be classified as silk goods. In the case of *Liebenroth* v. *Robertson*, 144 U. S. 35, photographic albums made of paper, leather, metal clasps and plated

clasps, the paper being worth more than all the rest of the materials put together, were held not to be liable to duty as "manufactures and articles of leather, or of which leather shall be a component part," but as manufactures of paper, or of which paper was the component material of chief value not specially enumerated or provided for. The case was held to be determined by Revised Statutes, section 2499, as amended by the act of March 3, 1883, that "on all articles manufactured from two or more materials the duty shall be assessed at the highest rates of which the component material of chief value may be chargeable." As the evidence distinctly showed that the paper was the component material of chief value, the albums were held to be assessable as manufactures of paper. In this case the two clauses were practically the same, one being of "manufactures and articles of leather, or of which leather shall be a component part, not specially enumerated;" and the other "paper; manufactures of, or of which paper is a component material, not specially enumerated." As the articles were made both of leather and paper, and were assessable with equal propriety under the one clause or the other, the court called to its aid section 2499, and held the article to be assessable at the highest rates at which the component material of chief value, to wit, the paper, was chargeable. If there had been in the statute such a provision with regard to articles manufactured wholly or in part of shell as there is with regard to articles manufactured wholly or in part of metal, this case would be decisive, but there is no necessity of relying upon section 2499 to aid us in the interpretation of the clauses in question here.

The views of the courts of the different circuits have not been uniform with respect to the classification of these glasses, but we agree with the district judge in the case of *Aloe* v. *Churchill,* 44 Fed. Rep. 50, that they should be classed as manufactures composed in part of metal under Schedule C, and, therefore, dutiable at forty-five per cent.

The judgment of the court below is, therefore,

*Reversed, and the case remanded for further proceedings in conformity with this opinion.*