## ROBERT REX *vs.* PULLMAN'S PALACE CAR CO.

New Castle County, February Term, 1897.

**Master and Servant. Duty of Master.**—The primary duties of the master are, first, to provide a reasonably safe place for the servant to work in or upon; second, to provide him with reasonably safe tools and machinery with which to do his work; third, to employ reasonably competent and careful co-workers and servants; fourth, to promulgate proper rules for the government of such servants in operating his business; where the extent of that business exceeds the limits of his personal supervision.

**Master and Servant. Fellow Servant.**—The servant assumes no risk whatever as to these primary duties of the master when he accepts employment; but he does assume all the ordinary risks of the employment, including the negligence of his fellow worker.

**Master and Servant. Safe Place.**—The giving of notice of the approach of danger where it does not enter into the creation of or the maintenance of a safe place, is not necessarily a primary duty of the master; but a secondary duty, so to speak, which may delegated to competent fellow servants under the the proper rules.

**Master and Servant. Rules.**—Wherever the master [may discharge a primary duty, by the adoption of rules, and the appointment of competent persons to carry them into effect; such rules must be reasonably adequate to the ends sought to be accomplished.

**Evidence. Res Gestæ.**—In an action on the case for injuries resulting from negligence, it is proper to show the familiarity of the plaintiff with his surroundings, but not what was usually due in other cases not shown to be exactly similar to that under consideration.

**Evidence.**—When it was the duty of a watchman to give warning of danger he will not be permitted to give his opinion whether the warning should be heard by the workmen.

**Same.**—Nor can it be proved that on other occasions the watchman failed to give warning.

This was an action brought by Robert Rex to recover damages from the Pullman's Palace Car Co. for injuries which he alleges that he received through the negligence of the company while in its employment. The *narr* contained five counts. The first alleged that the defendant caused a locomotive to run into and strike with great force, the car in which he was employed by the company to work. The second, that he permitted the locomotive to strike the car. The other three counts, that defendant failed to provide a safe place for the plaintiff to work, in that the car in which he was put at work was suddenly struck without giving warning. The pleas were not guilty and statute of limitations.

*Bradford & Vandegrift,* for the defendant asked for a continuance, on the ground that seven of the special jurors were absent, one being out of the State. Two were post masters and four were sick.

The application was refused.

At the trial it appeared that the defendant company, at the time of the accident operated and still operates large works in the eastern part of Wilmington, for the purpose of repairing and altering palace cars belonging to the company. The works and yard of the company, lie on the east and alongside of the track of the P.W. & B. R. R. Co., leading from Wilmington to Philadelphia, and are connected with that track by a siding. On this track, cars from the railroad are shifted into and out of the company's yard by means of steam locomotive shifters. Within the yard, the company has its own private tracks on which the cars are placed for repairs. Two of these tracks which are designated " A " and " B " in the testimony, a few feet apart run parallel with the track of P.W.&B.R.R. Next to the railroad, inside of the fence of the company, and between the fence and the shops, on the day of the accident, October 13, 1892, there were cars on both of these tracks. Three of them were on track " B," not coupled together but separated from each

other a short distance. In the south end of the southerly car, called " Luray," Rex on that day was working on a trestle in front of a quarter-inch glass, engaged with hammer and chisel in removing the lining or ceiling from the top of the car. While so engaged, about five o'clock in the afternoon, a shifter backed another car into the yard on that track, and up against the first car on the track, driving this against the second car and the second car against the " Luray " in which the plaintiff was working, with such force as to throw him against the glass. By the force of the blow his hammer went through the glass, his hand and arm were pushed against it, severely cutting and maiming the hand and wrist, and causing the injuries complained of.

At the time of the accident, Philip H. Chormann was gatekeeper of the company, and entrusted with the duty of admitting shifters, and of warning employes working in or about the cars, of the movements of the shifter on their respective tracks. He testified that at the time of the accident he went between tracks " A " and " B " to the farthest car, removed all the blocks, trestles and so forth in the way and called out in a loud voice, " Look out for the shifter on track " B," to give warning to the workmen on and about the cars.

Before and at the time the plaintiff received his injuries, the following rule was posted in the yard. "Instructions have been given to the yard foreman that when the shifting machine is about to couple any car in the yards of this company, they will notify all men at work on or inside such car. Upon such notification all men at work on this car will place themselves in such a position as will render them secure from falling or any other accident of any kind. All employes of this shop are cautioned to use every care when shifters are in the yard, that they do not get into the way of the locomotive or cars which may be moved by it, and it must be distinctly understood that no employe shall pass between cars while a locomotive is on the same track with the cars, whether the locomotive is moving or not. Employes are also forbidden to get on or off cars while in motion. All foremen will be required to see

that their instructions are strictly adhered to, in every particular."
Mr. Cook, yard foreman, testified that in pursuance of these in-
structions or rules, he told Mr. Chormann, gateman, " to go between
the cars, move all the obstructions and off the roofs between the
platforms, take out all the wood from under the wheels, to go off
on one side, and hollo, look out for the shifter, and make
such noise as he could to alarm the people inside. Mr. Cook fur-
ther testified that he was present on the occasion of the injury, and
that Mr. Chormann obeyed the instructions. The plaintiff testified
that he was another foreman and that he never saw or heard of the
alleged printed rules or of the verbal addition to them, nor did he
hear any warning on the day of the accident. There was some tes-
timony introduced, tending to show that the rules were different
from those stated.

He was asked by the counsel for the defence. " You state that
you had been frequently out at work on these tracks when shifters
had come in. That is so, is it?

"And there would be shifters coming and going coupling these
cars when you were out there with this gang of men that you con-
trolled in the cars, and at times in the cars yourself.

*Hilles*, for the plaintiff, objected to this question as irrelevant.

LORE, C. J.    We think that they are proper questions.    They
go to show the familiarity of the plaintiff with his surroundings.
Now what may be drawn out from that, or precisely what bearing this
may have upon this case is not ascertained, now, but · we do not
see how they can be excluded and think they ought not to be.

The further question, whether " on any of these occasions did
you ever have information or warning, was upon objection ruled
out as being actual notice."

" In your work, Mr. Rex, in cars on these tracks, on previous
occasions when you say shifters had come in, were you working in
a trestle in a car under such circumstances ?"

*Hilles,* objected, citing *Martin vs. B. & P. R. R. Co., Supra,* 123, where the court refused to allow the plaintiff to prove that the whistle of the engine was not usually blown at the crossing, on the ground that it was the particular time of the accident that he was confined to.

LORE, C. J.  Our former ruling was only to the extent that you may show knowledge or familiarity with the surroundings but not that this case should be governed by the circumstances attending some other case, which is not similar to this.  We think the question goes beyond the ruling previously made and the objection is sustained.

After Mr. Chormann had described how he passed between the cars and how far he was from anyone who might be in the car, and how on other occasions he had heard workmen talking in the cars, *Bradford,* for the defendant, asked him whether in passing between these cars calling out to those men as you did on the day of the accident, they would have heard you if possessing ordinarily good hearing?"

*Hilles,* for the plaintiff, objected on the ground that it would be mere matter of opinion.

LORE, C. J.  We do not think this is admissible.

We may not be able to draw the distinctive lines, but it seems to us that in order for any person to give an opinion, he must show that he was put in such a position that his opinion would be of some avail, and ordinarily it must be in like position.

Now, what is this question?   You ask this man to say, having passed outside and heard the people talking in the cars, whether in the voice he called on that day or other days, people could have heard or ought to have heard him.   That is substantially it.

This does not come under the rule that witnesses are permitted to say whether they were in hearing distance.   Those persons were under the same conditions, at the same place and the same time.

You are speaking now as to other dates or other times, and you do not put this man in the car with a hammer in his hand, working at a ceiling and ask whether then he could have heard at that time. You do not put him there under similar circumstances. You do not put him in a position where his opinion ought to go to the jury. You can show that passing along by those cars he heard people conversing there, but the only question you ask him to give an opinion upon is drawn from facts too remote, and really it is the inference for the jury to draw from the facts, not for him or any other witness.

Taking your illustration ; suppose a person at the same time (this is a different time), in the same place and under the same circumstances is called upon to testify. He may speak of what the person alongside of him could have heard from what he heard ; that in his judgment the other person could have heard the same thing. But suppose the other person had been outside of the house and away from him ; then it presents a different matter.

Benedict Adaniowitch, a witness, being recalled in rebuttal, and having testified that he had " worked with the Pullman's Palace Car Company, here previous to October 13, 1892, and during that time " and " when the shifter came in the yard " was asked by *Mr. Hilles*: Were you upon the trestle in the Pullman car in the shops of the Pullman Palace Car Company when a shifting engine came in, during Mr. Chormann's time, and Mr. Chormann did not give any warning to you of the approach of that shifter.

*Bradford*, objected.

THE COURT, LORE, C. J.: We rule that out because it must be under the same conditions. You must put the person in the same position.

You can readily see, if we admit that question, then we will have to try every particular instance, whether it is one and the same—the same sort of work, the same care, the same sort of noise about him, the same sort of atmosphere ; and then we would be

Questions of Evidence.

trying every one of thoses cases, and the case would be interminable. We do not mean to rule that you cannot put a man right there doing that work under precisely the same circumstances, and that men going there did not hear him.

Paul Steinke, a witness being produced, sworn and examined (in rebuttal) on the part and behalf of the plaintiff, testified that he was working for the defendant company at the time of the accident on the car on track " A " between the pit and the gate and was asked by *Mr. Hilles* " whether on that occasion on the same day of the accident, you heard Chormann, the gateman going between the cars on track " A " and track " B " calling out, " Look out for the shifter on track " B," or giving any other warning that the shifter was coming on track " B " ?

Objected to by counsel for the defendant, on the same ground as before stated : viz, that the circumstances were not similar and the testimony was not in rebuttal.

CULLEN, J. The question is whether this man heard it or not ; the issue is whether the other man heard it or not.

LORE, C. J. It does not appear that this man was standing right alongside of Mr. Rex in the car, doing the same work and under exactly the same circumstances.

*Mr. Hilles.* I cannot conceive how, if a man sees fit to get up on a witness stand and say that he did a certain thing, which was in this case the calling out certain words in a loud voice—for he said he had a loud voice and called at the top of his voice—

LORE, C. J. (Interrupting.) Where was this man ? (the witness).

*Mr. Hilles.* He said he was on track " A," in a car, between the gate and the pit.

Now, if your Honors please ; how can this man Chormann be contradicted. What possibility has the plaintiff of showing that

the condition of affairs which Chormann said existed, did not exist. He was hollowing, according to his testimony if it be true, in a tone of voice that could be heard where this witness was; that he was right by the car along that five hundred feet from the gate all the way down from the pit, because he says he has a very loud voice and that he was hollowing at the top of his voice. How can it be that a man who was right there at the time cannot show that his voice was not loud enough for him to hear?

LORE, C. J. Hear how? In the car as this man was?

*Mr. Hilles.* No.

LORE, C. J. Then, is it not a mere inference, not being under the same circumstances? They have proved that this man did walk in between those cars and did call out in a loud voice. Now, if there is any one who says he did not go between those cars and they were in the position where they could hear him and see him, they could prove it. But certainly to allow a man in another car under different circumstances to testify to that, would be right against our ruling, we think it not admissible.

*W. S. Hilles and T. B. Heisel,* for the plaintiff.

When Rex began his work in the car "Luray," on the day of the accident, it was a safe place in which to work, and it was the primary duty of the master to see to it that all reasonable precautions should be taken to guard the said Rex against any accident which might occur to him by reason of causes not within Rex's knowledge or observation. *Williams vs. Walton & Whann Co.,* 9 Houst. 330. If, therefore, the car was moved without notice previously given to the plaintiff and of which he had time to avail himself, the defendant would, upon such state of facts, undisputed, be undoubtedly liable. *Stewart vs. P., W. & B. R. R. Co.,* 8 Houst. 450.

The duty of the defendant, the owner of a car repairing establishment, to its employes was not performed by the adoption of rules

governing their conduct and intrusting the execution of such rules
to an employe. Such rules have no bearing upon the issues, except-
ing to charge plaintiff with contributory negligence if he violates
them.

In every case the sufficiency of the rule is a question of fact
for the jury under the instructions of the Court. This is always
the case where the facts are in dispute. *C. B. & Q. R. R. Co. vs.
Lallen,* 84 Ill. 109 ; *Ford vs. Railroad,* 124 N. Y. 493 ; *Able vs.
Railroad,* 128 N. Y. 662 ; *Railroad vs. Henderson,* 37 Ohio State
549 ; *Bass vs. Railroad,* 36 Wis. 450 ; *Commonwealth vs. Power,*
7 Metc. 596 ; *Day vs. Owen,* 5 Mich. 520 ; Bailey, Master's Lia-
bility 74 ; *Brown vs. Memphis,* 4 Fed. Rep. 37; *State vs. Chovin,*
7 Iowa 204 ; *State vs. Overton,* 4 Zab. 433 ; *Commonwealth vs.
Power,* 41 Am. Dec. 471 n ; 33 Am. & Eng. Railroad Cases 496
n. An employe cannot be considered bound by a rule of which he
has no knowledge. *At. & Mich. R. R. vs. McDonald,* 20 S. Rep.
472; *Louisville R. R. vs. Utz.,* 32 N. E. Rep. 881 ; *Fay vs. R. R.
Co.,* 30 Minn. 231 ; *Chielinski vs. Hoopes & Townsend,* 1 Mar-
vel 273 ; *Atchinson vs. Plunkett,* 2 Am. & Eng. Ruling Cases
127 ; *Sproug vs. N. Y. C. R. R. Co.,* 58 N. Y. 56 ; *Mackey vs. R.
R. Co.,* 8 Mackey 282; Wood, Railroads 1761 ; Bailey, Master and
Servant 85 ; Thomas, Neg. Rules and Decisions 822, 823 Beach,
Cont Negligence 484, note. If the jury shall believe from the evi-
dence that it was negligence on the part of the defendant, that com-
bined with the negligence of another servant, in causing the injury,
the defendant is liable. *Wheatley vs. P., W. & B. R. R.,* 1 Marvel
325.

*Bradford & Vandegrift,* for the defendant.

The notifying of the employes of the defendant including the
plaintiff at the time of his alleged injuries was an executive detail
of the operation of the business of the defendant, for the omission
or imperfect execution of which the defendant cannot be held re-
sponsible unless there was negligence on the part of the defendant

in not promulgating or establishing a proper rule or order for such notification.

*St. Louis &c. vs. Weedham*, 11 U. S. C. C. A. 56 ; *Wheatley vs. P. W· & B. R. R.*, 1 Marvel 325 ; *Central Ry. Co. vs. Keegan*, 160 U. S., 259 ; *Drake vs. N. Y. Cent. Ry.*, 80 Hun 490 ; *Berrigan vs. N. Y., Lake Erie, &c. R. R. Co.*, 131 N. Y. 582 ; *Kudik vs. L. B. Ry.*, 78 Hun 492 ; *Davis vs. Staten Island*, 1 App. Div. N. Y. 178 ; *Hermann vs. Port Blakely*, 71 Fed. Rep. 853 ; *Ocean S. S. Co. vs. Cheyney*, 12 S. E. Rep. 351 ; *Berkstrom vs. Staples*, 82 Mich. 654 ; *N. Y. R. R. Co. vs. Mase*, 11 U. S. C. C. A. 63 ; *Potter vs. N. Y. C. Ry.*, 136 N. Y. 77.

Upon the evidence, the foreman of the yard, the crew of the shifting engine and the plaintiff were fellow servants.

*McCusker vs. Long Island Ry. Co.*, 84 N. Y. 77 ; *Crispin vs. Babick*, 81 N. Y. 516 ; *St. Louis &c. vs. Weedham*, 11 U. S. C. C. A. 56 ; *N. P. Ry. Co. vs. Mase*, 11 U. S. C. C. A. 63 ; *Potter vs. N. Y. C. Ry. Co.* 136 N. Y. 77 ; *C. Ry. Co. vs. Keegan*, 160 U. S. 359 ; *Balt. E. Co. vs. Neal*, 65 Md. 438 ; *Wheatley vs. P. W. & B. R. R.*, 1 Marvel 325 ; *Randall vs. B. & O. Ry. Co.*, 109 U. S. 478; *Quebec S. Co. vs. Merchant*, 133 U.S. 375; *B. & O. vs. Baugh*, 149 U. S· 368 ; *N. P. R. R. vs. Humbley*, 154 U. S. 349 ; *N. P. Ry. vs· Peterson*, 162 U. S. 346 ; *Besil vs. N. Y. C. Ry.*, 70 N. Y. 171; *Valtz vs. Ohio R. R.*, 85 Ill. 500 ; *C. & A. Ry. Co. vs. Murphey*, 53 Ill. 336 ; *Gillman vs. R. R. Co.* 10 Allen 233 ; *Evans vs. Lippincott*, 47 N. J. L. 192 ; *Mitchall vs. N. P. Ry.* 70 Fed. Rep. 15 ; *Hanna vs. Granger*, 28 Atl. Rep. 659.

The rule established and promulgated by the defendant and in force before and at the time the plaintiff received his alleged injuries was a reasonable and sufficient rule which if enforced must have prevented the plaintiff from receiving his alleged injuries, unless the plaintiff contributed thereto.

LORE, C. J., (charging the jury.)

The law relating to this class of cases is quite well settled. In

the main, Counsel agree as to what the law is; their dispute chiefly arises as to its application.

This is a case of master and servant; and the rights, duties and obligations of that relation govern it.

The primary duties of the master are: First, to provide a reasonably safe place for the servant to work in or upon; second, to provide him with reasonably safe tools and machinery with which to do his work; third, to employ reasonably competent and careful co-workers and fellow servants; fourth, to promulgate proper rules for the government of such servants, in operating his business, where the extent of that business exceeds the limits of his personal supervision.

The servant assumes no risk whatever as to these primary duties of the master when he accepts employment; but he does assume all the ordinary risks of the employment, including therein, the negligence of his fellow servant.

Question is raised in relation to the performance of only two of these primary duties of the master in this case; viz: first, the furnishing of a reasonably safe place. Second, the promulgation of proper rules. No question has been raised, as to the sufficiency of the tools or machinery, or to the competency of fellow workmen. It is admitted, that the car in which Rex was working at the time of the accident, was a safe place when he went there Therefore the lack of safety was not inherent in, or a part of the car or place itself; but arose from the alleged failure of the company to give warning of the approach of the shifter. The danger was outside of the place itself and under the control of an independent human will.

If there was any such failure on the part of Chormann, whose duty it was to give notice, the liability of the company to answer for his negligence, depends upon whether in that act or failure to act, Chormann was a vice principal or agent performing a primary duty of the master, or was a fellow servant.

The business of altering and repairing cars, from the testimony in the case, involved the shifting of the cars into, about and

Charge.

out of the yard; that too, while the employes were working in and about the cars. This shifting was an operative part of the work in carrying on the business of the company. It was of frequent occurrence, with which Rex testifies he was familiar, and that he had theretofore worked in the cars when they were thus shifted on these tracks.

The giving of notice of the approach of danger where it does not enter into the creation of, or the maintenance of a safe place, is not necessarily a primary duty of the master; but a secondary duty, so to speak, which may delegated to competent fellow servants under proper rules. Notice is sometimes an incident to the safety of the place; a matter of executive detail, which ordinarily must of necessity, in operating large establishments, be entrusted to some independent human will other than that of the master; upon the faithfulness of which will, in the performance of duty it is reasonable to rely. It would be impracticable, if not impossible, for the master to perform such duties personally, with respect to every particular workman.

Under the undisputed facts in this case, it seems both upon principle and from the well considered cases; that the duty of giving notice of the approach of danger to Rex, by Chormann, was that of a fellow servant. The giving of such notice was a matter coming within that primary duty of the master, which is met, when he provides for its performance, by the promulgation of proper rules and regulations, and by the selection of competent fellow servants to carry them into effect.

It is unquestionably the duty of the master to give reasonable notice of danger to his employes and to take every other reasonable precaution for their protection and safety. Whether the actual giving of such notice, enters into and is a part of the master's primary duty, depends on the facts and circumstances of each particular case.

This is not a case of defective walls, as in *Giles vs. Diamond State Iron Company*, 7 Houst. 463; of poisonous tanks, as in *Williams vs. Walton & Whann Company*, 9 Houst. 330; of

defective floors, as in *Huber vs. Jackson & Sharp Company*, 1 Marvel 374; of unsafe tools and machinery, as in *Foster vs. Pusey*, 8 Houst. 166; *Quinn vs. Johnson Forge Company*, 9 Houst. 338; or *Chielinsky vs. Hoopes & Townsend Co.*, 1 Marvel 273; or the two cases last cited and much relied upon by the counsel for plaintiff, viz: the *Union Pacific R. R. Co. vs. Daniels*, 152 U. S. 588, which was a case of defective car wheels; and of the *Northwestern Fuel Company vs. Danielson*, 5 U. S. C. C. A 636, which was a burning coal deck. It is not like most of the well considered cases cited by counsel in this cause, where the defects were either in the place itself, or in the tools and machinery with which the servant was working; and which do not therefore relate to notice of the approach of danger from without.

It is not the case of *Stewart vs. the P., W. & B. R. R. Co.*, 8 Houst. 450. There the railroad company was not engaged in operating its road, but in an incidental department repairing its cars, in a shop for that purpose; under the personal charge of a foreman selected for, and then present overseeing that particular work. There were no rules promulgated or apparently necessary. The company relying upon the personal supervision of its foreman. It was in evidence, that the foreman had frequently been seen about the works under the influence of intoxicating liquor and was otherwise incompetent, and that the company retained him as foreman after it had received notice of his incompetency.

This point has been considered thus fully, because counsel for the plaintiff urged with so much earnestness and ability, that the giving of notice by Chormann to Rex, was a primary duty of the company, and could not be delegated so as to relieve it from liability, or made subject to be enforced by proper rules.

Our conclusion is, that in giving notice under the rules of the company of the approach of the shifter, Chormann was a fellow servant of Rex, and if he failed to give due notice, such negligence was the negligence of a fellow servant; of which Rex assumed the risk when he entered the employ of the company. The company

Charge.

may not be held liable for such negligence, provided the rules of the company in that behalf were proper rules, to effect such purpose.

Wherever the master may discharge a primary duty, by the adoption of rules, and the appointment of competent persons to carry them into effect; such rules must be reasonably adequate to the ends sought to be accomplished. Where the rules on their face are manifestly not adequate; or where the mode of enforcing the rules as permitted and approved by the master demonstrate their inadequacy, and the master still pursues that mode; he would be liable for any injuries resulting therefrom. His immunity from liability, depends upon the reasonable sufficiency of the rules. One of the tests of such sufficiency is, that they have been in force for a considerable length of time, and in such trial have accomplished the purpose sought. The presumption of law is in favor of their sufficiency on a question of negligence.

The printed or written rules in force at the time of the accident are in evidence. Practically they provide for giving actual notice to the workmen of danger from the shifter; and standing alone would be manifestly proper and adequate; but there is evidence of some oral addition to the rules, or to the mode of enforcing the rules, about which counsel do not agree and which is not entirely clear; there is such doubt, therefore, as to what the rule actually was, that we think that question under the evidence should be submitted to you; that you may ascertain from the evidence, what the rules actually were, and when so ascertained, whether they were such as a reasonably prudent man would promulgate and enforce, in the conduct of his business for the protection of his employes.

Taking the evidence upon this point therefore, as you remember it, relating to the oral addition to the rules, or to the mode of enforcing the rules, whichever it may be, if you believe that the said rules, or the mode of enforcing them as approved by the company, in effect did not provide for actual or reasonably sufficient notice to the plaintiff, the plaintiff would be entitled to recover. But if they did so provide, whether Chormann gave such notice or not,

your verdict should be for the defendant ; bearing in mind that the presumption of law is in favor of the adequacy of the rules.

This being an action founded upon the negligence of the defendant, such negligence must be proved, and the burden of proof is upon the plaintiff.

If your verdict should be for the plaintiff, it should be for such reasonable sum, as will compensate him for his injuries, including therein all expenses for medical attendance, a reasonable allowance for nursing and drugs, for his loss of time and wages, and for his pain and suffering in the past, and such as may come in the future, resulting from the accident, and for such permanent injuries, as from the evidence, the jury may believe will cover his pecuniary loss from his diminished ability to earn a living in the future.

*Verdict for the plaintiff.*

