HENSEL, BRUCKMANN & LORBACHER *v.* UNITED STATES (No. 1419).[1]

ROCK DRILLS—BAR HOISTS—STEAM ENGINES.

    The testimony shows both as to these rock drills and bar, hoists that they were manufactured as machines to be operated by compressed air and as to the bar hoists they were specially designed for use underground where steam can not be employed as a propelling force. The articles can not be deemed steam engines and they were properly assessed as manufactures of metal.

United States Court of Customs Appeals, January 15, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7566 (T. D. 34458).

[Affirmed.]

*Albert J. Washburn* and *George A. Puckhafer* for appellants.

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, no the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The protests in this case cover certain mining machinery consisting of rock drills and bar hoists and their respective parts. Duty was levied thereon at 45 per cent ad valorem under paragraph 199 of the tariff act of 1909 as manufactures of metal. The competing paragraph relied upon is paragraph 197 of the same act, and the only claim urged in this court is that the merchandise is dutiable under the provision for "all steam engines."

Appellants in their brief state that "the decision of the board in effect is that the ultimate use or method of operation of the article after it arrives in this country is to be the determining factor in the classification for duty rather than the inherent qualities of the article itself."

We think the board did not intend to assert this rule. Reference is made in the opinion to the uses to which the machines are put, but as we read the opinion it is not in conflict with the rule which was announced by the Supreme Court in Worthington *v.* Robbins (139 U. S., 337, 341), the authority of which has been recognized by this court in Moore *v.* United States (1 Ct. Cust. Appls., 115, 117; T. D. 31117), Athenia Steel & Wire Co. *v.* United States (1 Ct. Cust. Appls., 494; T. D. 31528), and United States *v.* Lyon & Healy (4 Ct. Cust. Appls., 438, 441; T. D. 33873).

[1] Reported in T. D. 35145 (28 Treas. Dec., 217).

The real question in the present case is whether the articles imported in the condition as imported come within the meaning of the term "steam engine." The evidence as to the condition of the article when imported was given by a witness for the importers, as it related to rock drills, as follows:

Q. These rock drills of yours, can they be employed with compressed air or steam interchangeably?—A. Yes, sir.

Q. Precisely the same drill?—A. I should say not precisely, in that an alteration is made in a portion of the drill to adapt it for steam, when it is sold for compressed air, and to adapt it to air, when it is sold for steam. In other words, an attachment.

Q. How were these fitted as imported? Were they made for compressed air or for steam?—A. The y were imported for air, because we sell them for air.

As to the bar hoists, the witness describes this as a hoisting engine specially designed for mining requirements, and so constituted that it is capable of being set upon a column, for which reason it is sometimes called in mining parlance a "stretcher bar"; that all the hoists covered by these protests are of such character; that, while it may be practicable to operate the same with steam or compressed air interchangeably as a motive power, it is, nevertheless, impracticable to use steam for that purpose when the hoists are employed for underground work; that these hoists are used largely, if not exclusively, in mines, and that miners would have very little use for them above ground.

It further appears from the testimony that in the use of compressed air in mining operations some independent power must be applied to produce the compressed air which in turn operates the engine or machine; that this condensed air is produced by an air compressor which may be operated by a steam engine, or by an electric engine, or by water power, but the force which operates the machines in question here, in their condition as imported, is compressed air and not steam.

It is true that the witness refers to a change in the machine as imported, adapting it to use as a steam engine, as a change in an attachment, and it is said "that such attachment is too insignificant to change the substantial character of the article with its chest, cylinder, valve gear, and piston any more than buttons on a coat would change the classification of the coat as wearing apparel," citing Seeberger v. Schlesinger (152 U. S., 581, 587), where the language is used:

We do not wish to be understood as holding that, if the metal be a mere incident or an immaterial part of the completed article, as, for instance, the screws or knobs upon an article of household furniture, or the buttons upon an article of clothing, such articles should be classified as manufactures in part of metal.

Such a case is clearly distinguishable from the present. This is something more than adding an attachment for the purpose of using the machinery in question here as a steam engine. The attachment which is added to this machine and becomes a part of it as imported

was designed for the purpose of adapting it to making it usable as and only as a compressed-air machine, and only usable by applying compressed air, whereas to constitute it a steam engine, a change in the appliance must be made not only by adding an attachment but by removing the attachment from the machine as it is imported and substituting another, something which we have no reason to expect will occur or was ever contemplated by the importer or by anyone dealing with such articles.

We think the board committed no error in overruling the protest, and that the finding of the board that the bar hoists were specially designed for underground work where steam can not be employed as a propelling force and are likewise compressed-air engines is fairly supported by the testimony in the case.

Reference is made to an alleged injustice of the importer being compelled to pay a higher tax than his competitor who uses or sells the same mechanisms (substantially) for above-ground use, in which case steam is employed as the motor fluid. There may be ground which would justify the Congress in taking this apparent injustice into account, but it is not the province of the court to remedy any inequalities that may exist in the tariff law. We are of the opinion that these goods as imported were not steam engines, this opinion not being predicated alone upon the fact that such was not their intended use, but upon the fact that as introduced into the commerce of the country they were not in condition to be used as steam engines or designed for or adapted to use other than as compressed-air machines to be used underground.

The decision of the Board of General Appraisers is *affirmed*.