BULLOCKS, INC. *v.* UNITED STATES (No. 4132)[1]

[1] T. D. 49553.

16

United States Court of Customs and Patent Appeals, April 4, 1938

*Lawrence A. Harper* (*Abraham. Gottfried* of counsel) for appellant.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument February 7, 1938, by Mr. Lawrence;

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:[2]

This is an appeal from a judgment of the United States Customs Court, Second Division, holding certain corsets or body-supporting garments dutiable at 75 per centum ad valorem under paragraph 1529 (c) of the Tariff Act of 1930, as assessed by the collector at the port of Los Angeles, rather than at 60 per centum ad valorem under the same paragraph of that act, as claimed by the importer—the appellant in this court.

The provisions in question read:

PAR. 1529. (c) Corsets, girdle-corsets, step-in-corsets, brassieres, bandeaux-brassieres; corsets, girdle-corsets, or step-in-corsets, attached to brassieres or bandeaux-brassieres; all similar body-supporting garments; all the foregoing, of whatever material composed, finished or unfinished, and all wearing apparel or articles to which any of the foregoing is attached, 60 per centum ad valorem; all the foregoing composed in whole or in part of elastic fabric, 75 per centum ad valorem. No wearing apparel or article so attached to such body-supporting garment shall be subject to a less rate of duty than if imported separately. Elastic fabrics of whatever material composed, knit, woven, or braided, in part of india rubber, 60 per centum ad valorem.

---

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

The cause was submitted to the trial court on the record in the case of *Bullocks, Inc.* v. *United States*, T. D. 48523, 70 Treas. Dec. 315, and a stipulation entered into by counsel for the parties as to the existence of certain facts not appearing in that record.

The pertinent part of the stipulation reads:

(1) That the garters attached to the body-supporting garments here in question represent less than one per centum of the value of the entire garment.

It appears from the incorporated record that the importer introduced in evidence Exhibit 1, as representative of the imported merchandise in that case. There is no evidence in the record before us to establish that the merchandise represented by Exhibit 1 is substantially the same or similar to the corsets in the case at bar. However, as counsel for both parties have presented the issues in the trial court, and in this court, upon the assumption that that exhibit is representative of the merchandise in the instant case, and as the trial court disposed of the issues upon that basis, we shall do likewise.

With the exception of some observations which we deem it unnecessary to state or discuss here, the trial court, in the instant case, relied upon, and followed, its decision in the incorporated case.

Exhibit 1 is an elastic corset. Securely attached thereto are six elastic suspenders or garters. There is no evidence of record, except the exhibit, to establish that the depending supporters or garters are or are not composed wholly or in part of elastic fabric. (They appear to be composed of such fabric.) If they are not, in view of the collector's classification, the burden was upon the importer to establish that fact. The importer having failed to establish that they are not composed in part of elastic fabric, the trial court disposed of the issues, and rightly so we think, upon the assumption that they were.

In its decision in the incorporated case overruling the protest, the trial court, *inter alia*, said:

The evidence shows that the merchandise, the classification of which is here involved, consists of body-supporting garments, but plaintiff insists that it is not made in whole or in part of elastic fabric, because it is made directly from small threads of cotton and rubber, and is, therefore, not made of that which was an elastic fabric in and of itself prior to its entry into the merchandise. Whether or not this is true is the question presented by counsel for the plaintiff for our determination. However, in our view of this case, there is one fact which makes it unnecessary for us to decide the question above presented.

The court quoted from the testimony of the importer's witness Dolly Ellsworth, relative to the method of manufacture of the bodies of the corsets. (The witness did not testify with regard to the suspenders or garters.)

Due to the views we hold, we deem it unnecessary to discuss the testimony of that witness.

The court also quoted from the testimony of the witness Pasquier, of Paris, France, manager of the foreign shipper of the involved corsets. The witness testified that the corsets or "corset-belts," as he called them, were designed by him to meet market conditions caused by "the depression," and that they were less expensive than the "styles" theretofore sold by his concern. Relative to the manufacture of corsets like those of which Exhibit 1 is representative, he said:

These corsets were made in two knitted pieces, the front and the back, *knitted to the shape of the body in a stitch which, in France we call "Maille anglaise"* (English stitch); they are *made of elastic imported from America and mercerized cotton.* The two parts are then assembled and mounted in our workshops in the form of a sheath, with two metal bones in the front and two at the back; they are reinforced at the front and back with cambric, *and finished off with satin and six suspenders.* [Italics ours.]

After quoting from the testimony of the witness Pasquier, the trial court quoted as follows from the brief of counsel for the Government:

It is to be noted that there is no testimony in the record as to the method of manufacture of the *six garters.* An inspection of the garters clearly demonstrates that they are composed or made of elastic.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

The garters are indivisible parts of the whole garment and the garters are entireties. It may well be that the material from which the garters were made was cut from a larger piece, the metal clasps and fringes added for the purpose of making the garters and then permanently attached. If that be so, and it must be accepted as such since the collector is presumed to have found all the facts necessary to support his classification, the merchandise is dutiable as assessed since it is made "in part of elastic fabric."

and said:

As will be seen from the quoted testimony of the witness taken by interrogatories [we have hereinbefore quoted the testimony referred to], the above contention of counsel for the defendant is supported by that testimony, and it is also supported by an examination of the sample admitted in evidence.

In view of the fact that the merchandise is composed *in part,* at least, of that which under the law we must presume to be elastic fabric, it would appear that the requirements of the paragraph involved have been met. The provision is not for corsets and similar body-supporting garments, composed wholly of elastic fabric, but for such articles *composed* wholly or *in part of* elastic fabric.

It is here contended by counsel for appellant that, in view of the evidence of record and the law on the subject, the *bodies* of the corsets are not composed in whole or in part of elastic fabric.

The trial court did not decide that issue, and, as hereinbefore indicated, we deem it unnecessary to do so.

Counsel for appellant further contend that the suspenders or garters can not control the classification of the involved corsets for three reasons; namely, first, they represent less than 1 per centum of the value of the "entire garment," and are, therefore, of negligible value;

second, they and the corsets are dutiable as separate entities, and not as entireties; and third, that the provision in paragraph 1529 (c), *supra*, for "all the foregoing composed in whole or in part of elastic fabric, 75 per centum ad valorem," under which the involved corsets were assessed, applies only to corsets, etc., enumerated in the first part of the paragraph and such articles as are included within the provision for "all similar body-supporting garments," and was not intended to apply to the provision for "wearing apparel or articles to which" such corsets, etc., or body-supporting garments are attached.

In support of their first contention, that is, that the suspenders or garters are of negligible value and should be disregarded, counsel for appellant rely upon the decisions in the following cases: *Seeberger* v. *Schlesinger*, 152 U. S. 581; *Seeberger* v. *Farwell*, 139 U. S. 608; *Magone* v. *Luckemeyer*, 139 U. S. 612; *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T. D. 39680.

In the case of *Seeberger* v. *Schlesinger*, *supra*, the Supreme Court, in holding that "Shell-covered opera glasses, composed of shell, metal, and glass," were dutiable as " 'manufactured articles, composed in part of metal,' under schedule C, act of March 3, 1883," said:

We do not wish to be understood as holding that, if the metal be a mere incident or an immaterial part of the completed article, as, for instance, the screws or knobs upon an article of household furniture, or the buttons upon an article of clothing, such articles should be classified as manufactures in part of metal; but where, as in this case, they form a necessary and substantial part of the article, we think this clause should determine their classification. Particularly is this so in view of the fact that opera glasses are frequently made of glass and metal alone, or with an outer covering of leather, which would form an inconsiderable part of the total expense. It would be obviously unjust that these cheaper glasses should pay a duty of forty-five percent while the more expensive glasses with shell coverings are dutiable only as manufactures of shell at twenty-five percent.

In considering the composition of an article, and particularly whether it is composed in part of a specified material, it is necessary to take into consideration the involved provisions of the statute, and general observations in a court decision, such as those in the quoted excerpt from the decision of the Supreme Court, should be considered in connection with the precise issues before the court.

It appears from the decision of the Supreme Court in the *Seeberger* v. *Schlesinger* case, *supra*, that the opera glasses were composed of shell, glass, and metal (shell in chief value). However, the value of the metal was not stated.

Relative to the decision in the case of *Seeberger* v. *Farwell*, *supra*, counsel for appellant state in their brief that "6 percent of the entire bulk of the manufactured goods was held to be negligible quantity, and was disregarded," and with reference to the decision in the *Magone* case, *supra*, counsel state that "1.99 per centum to 4.47 per

centum of the entire bulk of a certain fabric was disregarded as a negligible quantity."

We are unable to agree that, in either of those cases, the Supreme Court held as counsel for appellant contend. As we understand those decisions, the court held directly to the contrary.

In the *Seeberger* v. *Farwell* case, *supra*, the issue was whether women's and children's dress goods, composed of 94 per centum wool and 6 per centum cotton, were dutiable at 9 cents per square yard and 40 per centum ad valorem as articles composed *wholly of wool*, or at 5 cents per square yard and 35 per centum ad valorem as articles composed *in part of wool*, under the tariff act of March 3, 1883. The court held that the cotton was not negligible and should be considered; that, therefore, the imported goods were *not composed wholly of wool;* and that they were dutiable at the lower rate provided for goods composed *only in part of wool.*

The Supreme Court affirmed the judgment of the Circuit Court in that case, and, in its decision, stated and approved the views expressed by that court. We quote:

> The court, in its opinion, said that the collector, in classifying the goods, evidently assumed that the purpose of mixing the cotton with the wool was to secure a low classification, and assumed also that so small a quantity of cotton would not materially change the character of the goods, as merchandise, when offered for sale to consumers, and, therefore, looked upon the contention of the plaintiff for a lower classification as an attempt to defraud the revenue, and accordingly imposed the higher duty; that, Congress having made special provision for a lower rate of duty upon goods when composed in part of wool, *without naming how much of other material should enter into their composition in order to secure such lower rate of duty,* the court was of opinion that manufacturers and importers had the right to adjust themselves to the foregoing clause of the tariff, and *to manufacture the goods with only a small percentage of cotton,* for the purpose of making them dutiable at the lower rate; that, although the goods in question *contained so small an amount of cotton that the ordinary dealer in them and the ordinary examiner would not detect the cotton without a close and careful examination,* that did not change the legal right of the plaintiffs to bring their goods within the operation of the clause involved, by the admixture of even a small percentage of cotton, if they could do so; and that goods made of 94 per cent in bulk of wool and 6 per cent in bulk of cotton fairly came within the description of goods composed in part of wool. [Italics ours.]

We deem it unnecessary to discuss the decision in the case of *Magone* v. *Luckemeyer, supra,* further than to say that the Supreme Court held that cotton in varying precentages ranging from 1.99 to 4.47 in goods otherwise composed of wool, it being possible to discover the cotton "only by chemical analysis," was not negligible, and that, therefore, the merchandise was not dutiable at the rate provided in the tariff act of March 3, 1883, for goods composed *wholly of wool*, but rather was dutiable at the rate provided for goods composed *in part of wool.*

In the case of *United States* v. *Kalter Mercantile Co. et al., supra,* we held, among other things, that boots composed of cotton or other vegetable fiber and india rubber were dutiable as articles of wearing apparel composed of such materials, under paragraph 256 of the tariff act of 1913, and that "nails, hobnails, buckles, and rivets," although parts of the boots, were of such "small amount" as to be "insignificant and negligible."

We have given careful consideration to the arguments of counsel for appellant, but are unable to concur in their views that the involved suspenders or garters are immaterial and negligible parts of the imported articles.

Paragraph 1529 (c), *supra,* plainly provides that "Corsets," etc., "all similar body-supporting garments" of *"whatever material composed"* and *"all wearing apparel or articles"* to which any of the foregoing is attached" shall be dutiable at 60 per centum ad valorem, and that *"all the foregoing* composed in whole or in part of elastic fabric" shall be dutiable at 75 per centum ad valorem. [Italics ours.]

It is clear, we think, that the Congress intended that the 75 per centum ad valorem rate of duty provided in the paragraph under consideration should apply to "Corsets," etc., and to wearing apparel or articles attached thereto, if either or both are composed in whole or in part of elastic fabric. The provisions contained in the first sentence of the paragraph definitely treat "Corsets," etc., and "wearing apparel or articles" attached to such "Corsets," etc., as entireties. However, *if the applicable rates of duty provided in the paragraph* are less than the rates of duty provided for such "wearing apparel or articles," if imported separately, the "Corsets," etc., and the "wearing apparel or articles" attached thereto shall, by virtue of the provisions in the second sentence of the paragraph, be treated as separate entities for duty purposes.

We have examined the legislative history, as requested by counsel for appellant, and, in our opinion, it merely confirms what we have heretofore stated to be the meaning of the provisions in question.

We conclude, therefore, that the suspenders or garters attached to the corsets are wearing apparel or articles, within the purview of paragraph 1529 (c), *supra;* that they and the corsets to which they are attached are entireties; and that, as the suspenders or garters are presumably composed of elastic fabric, the entireties are dutiable at 75 per centum ad valorem, as assessed by the collector and as held by the trial court.

Judgment *affirmed.*