James F. STARRY, Appellant,

v.

HORACE MANN INSURANCE COMPANY, Appellee.

No. 6472.

Supreme Court of Alaska.

Aug. 27, 1982.

Kenneth O. Jarvi, Anchorage, for appellant.

Kenneth P. Jacobus and Joe M. Huddleston, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee.

Before BURKE, C. J., RABINOWITZ, CONNOR and COMPTON, JJ., and CARLSON, Superior Court Judge.*

OPINION

COMPTON, Justice.

Presented in the guise of a simple problem of insurance coverage, this peculiarly "Alaskan" controversy raises a profound, albeit hairy question: is a "bear hide wall mount" a "fur" within the scope of an insurance exclusionary clause? Differently stated, "When is a fur not a Fur?"[1].

* Carlson, Superior Court Judge, sitting by assignment made pursuant to Alaska R.App.P. 106(a).

1. We disclaim responsibility for this characterization. *See* 5 The Alaska Bar Rag, Nos. 5 & 6, at p. 4 (1982).

## I. BEAR FACTS

The bear hide wall mount in dispute was displayed on the living room wall in James F. Starry's home. The hide was prepared as a rug, in a stretched-out fashion with the head and claws attached.[2] A burglar, as it were, left the wall bare, as it wasn't. Starry filed a claim with his insurer, Horace Mann Insurance Co. (Horace Mann) to recover $5,000.00, the value of the bear hide mount, and for incidental damages to the home resulting from the unlawful entry.

Horace Mann, baring claws of its own, invoked the policy's exclusionary clause and offered only partial compensation for the bear hide. The exclusionary clause provided:

This Company shall not be liable for loss in any one occurrence with respect to the following property for more than ... (4) $500.00 in the aggregate for loss by theft of jewelry, watches, necklaces, bracelets, gems, precious and semi-precious stones, gold, platinum and *furs including articles containing fur which represents its principal value* ; ... [Emphasis added].

Perhaps estimating the difficulty of convincing another brown bear to trade a life in the wilderness for posterity in the Starry home, Starry initiated this suit against Horace Mann, seeking recovery of the full value of the bear hide and an award of punitive damages.

The parties filed cross motions for summary judgment. In an affidavit in support of his motion, Starry contended that he did not obtain supplemental insurance for the bear hide mount, as he did for other items subject to the exclusionary clause, because he did not "understand a bear hide to be a fur." His understanding was that the bear hide mount was "a trophy, and not a fur."

Starry submitted the affidavit of Perry Green, an Anchorage furrier, stating that

2. Another, albeit far different bear hide mount was described in *Green v. Koslosky*, 384 P.2d 951 (Alaska 1963). In that case a taxidermist attempted to prepare a full size standing mount of a polar bear. The flawed result purportedly bore no resemblance to a polar bear, and was instead described as an "albino grizzly."

"Brown bear rugs and mounts are not furs, anymore than a moosehead mounted on a board would be considered a fur. A Brown Bear rug is a trophy. . . . A Brown Bear is a hair animal and not a fur."

In contrast, Horace Mann submitted the affidavit of Gerald A. Victor, another furrier in Alaska, who stated in part:

It is well known that bears have fur. The quality of the fur on a bear rug is an integral factor in determining its worth. It is certainly true that the existence of fur on a bear rug represents its principal value. If one were to remove all of the fur from a bear rug it would be virtually worthless. It is well known that hunters who wish to bag a bear for the purposes of making it into a rug are very concerned with the quality of the bear's fur coat. For this reason bears who are being hunted for this purpose are often taken in the Spring when their coats are at their richest.

The court entered partial summary judgment on the contract claim in favor of Horace Mann. The judgment was certified as final pursuant to Civil Rule 54(b) and this appeal followed.

## II. BEAR COVERAGE

■ An insurance policy "is construed so as to provide that coverage which a layman would reasonably have expected given his lay interpretation of the policy terms." *Continental Insurance Co. v. Bussell*, 498 P.2d 706, 710 (Alaska 1972). We have also recognized "the rule that provisions of coverage should be construed broadly while exclusions are interpreted narrowly against the insured." *Hahn v. Alaska Title Guaranty Co.*, 557 P.2d 143, 145 (Alaska 1976). Ambiguities are re-

solved against the insurer. *See Puritan Life Insurance Co. v. Guess*, 598 P.2d 900, 904 (Alaska 1979). Of course, the preference due an insured's interpretation is only applicable where the insurance provision in dispute is ambiguous. *See U. S. Fire Insurance Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979).

The question raised by Starry on appeal is whether a layperson, viewing the contract as a whole, would reasonably expect that a bear hide wall mount is a fur article "containing fur which represents its principal value" within the meaning of the exclusionary clause. In support of his position that a bear hide wall mount is not subject to the exclusion, Starry points to the definition of a fur animal by the Alaska Department of Fish and Game.[3] Horace Mann, in contrast, submits that the phrase is not ambiguous and, by common understanding, would be read as including a bear hide wall mount. The insurer points to the dictionary definition of fur,[4] the Encyclopedia Americana, and state and federal statutes and regulations allegedly including brown bear hides within the purview of a "fur."[5]

Horace Mann also refers to *Seeberger v. Schlesinger*, 152 U.S. 581, 14 S.Ct. 729, 38 L.Ed. 560 (1894), in which the Supreme Court decided that Chinese goat skins are furs for the purposes of custom duties, even though "goat skins are not ordinarily classified as furs—a term usually reserved for the short fine hair of certain animals, whose skins are largely used for clothing."

■ The other articles named in the exclusionary clause all consist of decorative personal apparel, and would suggest to a reasonable layperson that the scope of the clause is restricted to items of that genre. While the furriers' affidavits and the vari-

3. 5 AAC 90.020(8) states:

(8) "fur animals" includes beaver, coyote, arctic fox, red fox, lynx, marten, mink and weasel, muskrat, land otter, sea otter, raccoon, red squirrel, flying squirrel, ground squirrel and marmot, wolf and wolverine, excepting domestically raised fur animals.

Elsewhere, a bear is defined as a "big game animal." 5 AAC 90.020(3).

4. According to Horace Mann, Webster's Third New International Dictionary, defines "fur" as "the fine, soft, thick covering or coat of a mammal." However, several secondary dictionary meanings define "fur" with reference to garments. *See* Webster's New World Dictionary at 566 (2d Ed. 1980).

5. *See* AS 16.05.940(8); 15 U.S.C. § 69(b); 16 CFR § 301.0; 19 CFR § 11.12(a).

ous references to statutory and regulatory definitions of the term "fur" suggest that the term may have a specialized meaning in a variety of other contexts, this case involves the interpretation of a homeowner's insurance policy, not a customs' regulation,[6] fish and game laws,[7] a workers' compensation statute,[8] or a commercial trade dispute.[9] We think a reasonable homeowner could view the exclusionary clause in question as restricted to common, everyday effects in the nature of jewelry and furbearing garments. With such an interpretation in mind, we think it plain that a reasonable person would not conclude that a bear hide wall mount is subject to the exclusionary clause. One, we suspect, would have nearly as much difficulty using the brown bear hide as a garment in its mounted condition as one would before the bear's demise.

In sum, we conclude that recovery for the bear hide wall mount is not limited by the exclusionary clause. We REVERSE and REMAND for the entry of summary judgment in Starry's favor.

MATTHEWS, J., not participating.

---

**6.** *See, e.g., Seeberger v. Schlesinger,* 152 U.S. 581, 14 S.Ct. 729, 38 L.Ed. 560 (1894).

**7.** *See, e.g., Barbour Fur Co., Inc. v. North Carolina Wildlife Resources Comm'n,* 40 N.C.App. 609, 253 S.E.2d 323 (1979).

**8.** *See, e.g., Sprague-Dawley, Inc. v. Moore,* 37 Wis.2d 689, 155 N.W.2d 579, 581 (1968).

**9.** *See Astor v. Union Ins. Co.,* 9 N.Y.C.L. 97, 7 Cow. 202 (N.Y.1826).