UNITED STATES *v.* BORGFELDT (No. 398).[1]

DEER-FOOT HANDLED KNIVES.

A 6-inch knife, with a 5-inch folding blade that when opened fastens with a spring lock, blade and handle measuring 10 inches in length, is a "hunting knife" in the commercial sense of the term, and was dutiable under paragraph 155, tariff act of 1897.

United States Court of Customs Appeals, February 1, 1911.

TRANSFERRED from United States Circuit Court, Eastern District of Pennsylvania, G. A. 6703 (T. D. 28685).

[Affirmed.]

*D. Frank Lloyd*, Assistant Attorney General (*Thomas J. Doherty* on the brief), for the United States.

*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellees.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

BARBER, Judge, delivered the opinion of the court:

The articles imported in this case were entered at the port of New York and are dutiable under the tariff act of 1897, either as clasp knives, under paragraph 153, or as hunting knives, under paragraph 155, of the act. The material part of the respective paragraphs is as follows:

153. Penknives or pocketknives, clasp knives, pruning knives, and budding knives of all kinds, or parts thereof, and erasers or manicure knives, * * * wholly or partly manufactured * * * valued at more than three dollars per dozen, twenty cents per piece and forty per centum ad valorem.

155. Table, butchers', carving, cooks', hunting, kitchen, bread, butter, vegetable, fruit, cheese, plumbers', painters', palette, artists', and shoe knives, forks and steels, finished or unfinished, * * * : *Provided,* That none of the above-named articles pay a less rate of duty than forty-five per centum ad valorem.

The importation is knives with deer-foot handles. The entire length of the official sample is about 6 inches, the blade being a 5-inch folding blade which, on being opened, fastens with a spring lock, and when open the blade and handle measure about 10 inches in length.

The collector classified the articles as clasp knives. The appellees claimed, and the board held, that they were dutiable under paragraph 155 as hunting knives.

The board, amongst other things, found that the term "hunting knives" is a well known commercial term, and includes the knives in question, and also that the term "clasp knives" is not, as a trade term, in general use.

It is clear that, although they are not so designated in trade, these knives are in fact clasp knives because the blade folds into the handle,

---

[1] Reported in T. D. 31279 (20-Treas. Dec., 249).

so that the real question is whether the importation shall be classified according to the ordinary meaning of the words or according to the commercial designation.

But preliminary to its consideration the Government contends that the evidence fails to establish a commercial designation and asks us to reverse the finding of the board upon that question. The commercial designation of an article is not a matter of which courts can take judicial notice, but is to be proved by evidence. Seeberger v. Schlesinger (152 U. S., 581).

From the discussion of the testimony in the briefs and from the record it is clear that there was considerable conflict in the evidence upon this point, and we are unwilling to say that this finding of the board is either without substantial evidence to support it or that it is clearly contrary to the weight of evidence, one of which conditions should obtain to warrant a reversal of the finding. On the other hand, without going into a discussion thereof, we think the finding is sustained by a fair balance of the evidence, having in mind that the presumption is in favor of the collector's action. The real question, therefore, recurs whether or not the knives shall be classified according to their commercial designation. This question was long ago answered by the Supreme Court in the affirmative.

In Two Hundred Chests of Tea, Smith, Claimant (22 U. S., 428, at p. 437), the following language was used:

> The object of the duty laws is to raise revenue, and for this purpose to class substances according to the general usage and known denominations of trade. Whether a particular article were designated by one name or another in the country of its origin, or whether it were a simple or mixed substance, was of no importance in the view of the legislature. It did not suppose our merchants to be naturalists, or geologists, or botanists. It applied its attention to the description of articles as they derived their appellations in our own markets, in our domestic as well as our foreign traffic. And it would have been as dangerous as useless to attempt any other classification than that derived from the actual business of human life.

And again in Cadwalader v. Zeh (151 U. S., 171, at p. 176) the court declared—

> It has long been a settled rule of interpretation of the statutes imposing duties on imports that if words used therein to designate particular kinds or classes of goods have a well-known signification in our trade and commerce, different from their ordinary meaning among the people, the commercial meaning is to prevail, unless Congress has clearly manifested a contrary intention; and that it is only when no commercial meaning is called for or proved that the common meaning of the words is to be adopted.

Applying the doctrine of these cases to the one at bar, the judgment of the Board of General Appraisers is *affirmed*.