UNITED STATES *v.* DOWNING (No. 252).[1]

BURIAL OR BRIDAL WREATHS IN CHIEF VALUE OF METAL.

The importation consisting of burial or bridal wreaths made of wax, cotton, tin, wire, and other metal did not come within that clause of paragraph 425, tariff act of 1897, limited to feathers, fruits, grains, leaves, flowers and stems or parts thereof; but, as appears from the evidence, being made substantially in part of metal and that metal gave shape, form, and name to the articles and determined their use, they were dutiable under paragraph 193 of that act.—Seeberger *v.* Schlesinger (152 U. S., 581, 587) cited and approved.

United States Court of Customs Appeals, March 20, 1911.

APPEAL from a decision of the Board of United States General Appraisers, Abstract 23470 (T. D. 30691).

[Affirmed.]

*D. Frank Lloyd*, Assistant Attorney General (*William K. Payne* on the brief), for the United States.

*Lester C. Childs* for appellees.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The importing firm imported at the port of Chicago burial and bridal wreaths. They are made up of wax, cotton, tin, wire, and

---

[1] Reported in T. D. 31434 (20 Treas. Dec., 543).

other metal. They are in imitation of such articles when made of flowers, leaves, and wire. The Board of General Appraisers found that they were in chief value of metal. It is made perfectly clear by the record that they are at least substantially in part of metal. They were classified for duty by the collector of the port of Chicago under paragraph 425 of the tariff act of 1897 as "artificial or ornamental leaves, flowers, and stems or parts thereof, of whatever material composed," which paragraph reads:

425. Feathers and downs of all kinds, including bird skins or parts thereof with the feathers on, crude or not dressed, colored, or otherwise advanced or manufactured in any manner, not specially provided for in this act, fifteen per centum ad valorem; when dressed, colored, or otherwise advanced or manufactured in any manner, including quilts of down and other manufactures of down, and also dressed and finished birds suitable for millinery ornaments, and artificial or ornamental feathers, fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for in this act, fifty per centum ad valorem.

The importers' contention is that they are dutiable either as unenumerated manufactured articles under section 6 or at the rate of 45 per cent ad valorem under paragraph 193 of that act as—

Articles or wares not specially provided for in this act, composed wholly or in part of iron, steel, * * * or other metal, and whether partly or wholly manufactured, * * *.

Inasmuch as it appears that some confusion of authority has arisen upon the subject matter and the interpretation of the applicable provisions of the tariff law, it becomes important to bear in mind that this record discloses, and the fact has been particularly emphasized with reference to these importations, that they are substantially, if not chiefly, metal in value. The wire, tin, and other metal in the articles are employed to assemble the other component materials from their category of materials for use of the manufacturer into completed articles made up and ready for their ultimate and final use by the consumer. They give form, shape, and character to the merchandise, and their employment in the manner stated causes the completed article to be known, so far as the record shows, under different and distinct names, such as "bridal wreaths" and "burial wreaths."

In January, 1907, the United States Circuit Court for the Southern District of New York, in Kreshower v. United States (152 Fed. Rep., 485), Hazel, Judge, was called upon to determine the proper classification of this merchandise. The court in that case held that the wreaths of leaves were properly dutiable under paragraph 425 as artificial or ornamental leaves. It will be noted, however, in passing that the court in that case laid special stress upon the fact stated in the opinion, "the wire attachment certainly was not a component part of the wreath, but it seems to have been merely an incidental part thereof."

In June, 1907, the United States Circuit Court for the Southern District of New York, Martin, Judge, held that feather boas held together by a cord of little value were dutiable by virtue of the operation of section 7 of the tariff act of 1897 as feathers under paragraph 425. The court laid special stress upon the fact that the cotton cord was of insignificant value compared with the value of the feathers.

In February, 1909, in the case of the United States *v.* Berlinger (167 Fed. Rep., 800), the United States Circuit Court of Appeals for the Second Circuit held feather boas composed of ornamental feathers and a small quantity of wire were dutiable under paragraph 193 as "articles or wares composed wholly or in part of iron, steel, or other metal, not specially provided for," and not as "feathers advanced or manufactured in any manner" under said paragraph 425. That case is relied upon as an authority here by the importer. The provisions of the portion of paragraph 425 as to "feathers advanced or manufactured in any manner" and the latter part as to "grasses" and "flowers" are not entirely the same, in fact greatly differ, and the court here expresses no opinion or dissent from the reasoning or the conclusion reached by the court in the Berlinger case.

In November, 1909, the identical point as to wreaths made up of ornamental leaves and wire was before the United States Circuit Court of Appeals for the Third Circuit, in United States *v.* Bayersdorfer (175 Fed. Rep., 959), and that court held that they were dutiable as artificial or ornamental leaves not specially provided for under the provisions of paragraph 425, affirming the court below upon that point.

The Berlinger case was urged upon that court by the importers as an authority to the contrary. The court for the third circuit either considered that the cases presented were not parallel by reason of the difference in the reading of the provisions of law, for which assumption there is ample warrant, or that there was a difference in the facts presented. It refused to follow the Berlinger case. The court below had expressly followed the Kreshower case (152 Fed. Rep., 485), and commended the reasoning in that case. Inasmuch as that case was expressly based upon the fact that the metal was comparatively an insignificant portion of the imported article, it may be possible that the court regarded the facts the same.

As we read paragraph 425, and particularly the latter portion thereof, it is limited to feathers, fruits, grains, leaves, flowers, and stems or parts thereof, and does not extend to any manufactures made up of these. Whenever, therefore, an imported article is to be classified for duty as one of these articles it must be at least substantially within the enumerations of the statute. These importations, however, have passed beyond that category; they are now substantially in part of metal. They have taken on new form and shape and a new name. They are manipulations, and manufacture has devoted

them to specific purposes. That manufacture has employed in its use another material, to wit, metal, which in a substantial, if not a controlling factor, has given shape, form, name, and determined the use of the imported article. We are, therefore, to inquire, under the terms of paragraph 425, admitting the imported article to be composed of leaves, flowers, etc., whether or not it is in any other part of the act specially provided for.

Paragraph 193 provides for manufactures wholly or in part of metal. That "manufactures of" is a specific designation for the purposes of tariff construction is a well-settled proposition. See Arthur v. Butterfield (125 U. S., 70). Being "specially provided for," they are taken out of the provisions of paragraph 425 by the excepting clause therein, "not specially provided for in this act."

We think that the principles of this case are settled by Seeberger v. Schlesinger (152 U. S., 581, 587). It will be noted in that case the language the subject of consideration by the court, while not so comprehensive as the language in the first part of paragraph 425, "manufactured in any manner," was more comprehensive than the provision of paragraph 425 here under consideration, "artificial or ornamental * * * leaves, flowers, * * * and stems or parts thereof, of whatever material composed."

The language of the statute considered by the Supreme Court was "shells, whole or parts of, manufactured." The importation was "shell-covered opera glasses, composed of shell, metal, and glass." The same contention was made in that case as here by the Government, that they were dutiable as shells, either directly or by virtue of a similar provision to section 7 here invoked by the Government, to wit, section 2499 of the Revised Statutes, then in force. The importer made the same contention as is here made.

The court said:

We think that the court was in error in holding that the articles in question were shells, whole or parts of, manufactured, as this clause was obviously intended to apply to articles made entirely, or nearly so, of shell, such as combs, bracelets, chains, and lorgnons, and not to articles of which shell was a mere component, though perhaps, as in this case, the most valuable, part. Nor are we satisfied that they should be classed as "articles manufactured from two or more materials," in which case, by Revised Statutes, section 2499, as amended by the act of 1883 (22 Stat., 491), duty should be assessed at the highest rate at which the component material of chief value may be chargeable. In view of the more specific designation in Schedule C, page 501, of "manufactures, articles, or wares not specially enumerated or provided for in this act, composed wholly or in part of * * * metal," and in view of the fact that, while the metal is not the component of chief value, it is a substantial part of the finished glass, and the framework upon which the lenses and shell are mounted, we think these articles should be classed as manufactures of metal. We do not wish to be understood as holding that, if the metal be a mere incident or an immaterial part of the completed article, as, for instance, the screws or knobs upon an article of household furniture, or the buttons upon an article of clothing, such articles should be classified as manufactures in part of metal; but where, as in this case, they form a necessary and substantial part of the article, we think this clause should determine their classification.

The court is of the opinion that the merchandise is properly dutiable as claimed by the importer.

*Affirmed.*

MONTGOMERY, Presiding Judge, and HUNT, SMITH, and BARBER, Judges, concur. .