## GAGE BROS. & CO. *v.* UNITED STATES (No. 712).[1]

ARTIFICIAL FLOWERS, POMPONS, PAQUETS, ETC.

Where artificial flowers, leaves and the like, have taken on, through the use of metal wire in their construction, a new form and shape and name, they are to be deemed manufactures of metal; and in the present case, where the evidence is sufficient to show that a particular part of the consignment falls within this rule, the board's holding as to this part is modified; but proof failing as to the real character of the remainder of the consignment, the board's ruling as to this will not be disturbed.—United States *v.* Downing (1 Ct. Cust. Appls., 337; T. D. 31434).

United States Court of Customs Appeals, January 11, 1912.

APPEAL from Board of United States General Appraisers, Abstract 25774 (T. D. 31575).

[Modified as to part, affirmed as to part.]

*Isidore Fried* and *Lester C. Childs* for appellants.

*Wm. L. Wemple,* Assistant Attorney General (*Wm. K. Payne,* Deputy Assistant Attorney General, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This was an importation of artificial leaves, grasses, flowers, stems, pompons, paquets, etc., at the port of Chicago. They were classified

---

[1] Reported in T. D. 32174 (22 Treas. Dec., 87).

for dutiable purposes at that port under the provisions of paragraph 425 of the tariff act of 1897, which read as follows:

425. Feathers and downs of all kinds, including bird skins or parts thereof with the feathers on, crude or not dressed, colored, or otherwise advanced or manufactured in any manner, not specially provided for in this act, fifteen per centum ad valorem; when dressed, colored, or otherwise advanced or manufactured in any manner, includ-. ing quilts of down and other manufactures of down, and also dressed and finished birds suitable for millinery ornaments, and artificial or ornamental feathers, fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for in this act, fifty per centum ad valorem.

The importers make the contention that they should be rated for dutiable purposes as "manufactures in part of metal" under the provisions of paragraph 193 of the same act.

The principle of law involved in this case was settled by this court in United States v. Downing (1 Ct. Cust. Appls., 337; T. D. 31434), wherein the decisions rendered by the United States Circuit Courts of Appeals for the Second and Third Districts were reviewed and a principle of decision enunciated.

In that case this court said:

As we read paragraph 425, and particularly the latter portion thereof, it is limited to feathers, fruits, grains, leaves, flowers, and stems or parts thereof, *and does not extend to any manufactures made up of these.* Whenever, therefore, an imported article is to be classified for duty as one of these articles it must be at least substantially within the enumerations of the statute. These importations, however [which consisted of burial and bridal wreaths made up of artificial flowers in part of metal], have passed beyond that category; they are now substantially in part of metal. They have taken on new form and shape and a new name. They are manipulations, and manufacture has devoted them to specific purposes. That manufacture has employed in its use another material, to.wit, metal, which, in a substantial, if not a controlling factor, has given shape, form, name, and determined the use of the imported article.

This decision was based upon the doctrine laid down by the Supreme Court in Seeberger v. Schlesinger (152 U. S., 581, 587).

The chief difficulty in this case concerns the application of the decision quoted to the facts as proven in this record. The record covers many protests and more invoices.

Several samples said to be *illustrative* of the imported merchandise were introduced, to wit, 10 in number, and marked "Illustrative Exhibits A to J, inclusive." While there was the sweeping declaration upon the part of one of the witnesses for the importing firm that they were illustrative of the entire importations, the record further discloses that that is not accurately true; and the same witness later on, under direction of the Board of General Appraisers to segregate upon the invoices those items which were represented by these samples, or any of them, and those which were not so represented, submitted lists covering but a part of these invoices, which lists as stated purported to designate the goods upon these invoices which are represented by the illustrative samples mentioned. The record indicates that upon

the lists there are many items which are not represented by these illustrative exhibits, but which are simply artificial flowers, leaves, or grasses.

The Board of General Appraisers sustained the decision of the collector as to the whole. Under the doctrine of United States *v.* Downing this was clearly error as to a part of the importations.

The 10 illustrative exhibits referred to offer a variety of manipulations of artificial flowers, the most pronounced form being that of wreaths made up of artificial flowers, buds, and leaves, which, in addition to the wire entering into the individual flower, bud, or leaf, has added thereto the necessary wire to bring them into the form of a wreath of suitable proportions for manufacturing purposes, and of an artistic design. In fact, the undisputed testimony in the record is that all of these exhibits are assembled into artistic forms. The simplest exhibit is that of a paquet, so designated by the manufacturers who testified, and which in ordinary parlance would be understood as a bouquet. As to these, the uncontradicted testimony in the record is that they consist of artificial roses and other flowers, buds, and leaves assembled in an artistic manner, in accordance with an approved design, and that in the condition as imported they are ready for use as paquets for millinery uses. In each of these, in addition to the wires used in the formation of the individual flowers, buds, and leaves, there is added thereto the necessary metal wire to assemble the individual parts of the paquet, and to give it that shape and form and preserve the same, constituting the desired design, and make the same ready for its ultimate use.

The case, like many other customs cases, presents a difficult problem in the determination of exactly where to place the dividing line between the artificial flower *per se* and a manufacture of such.

It is to be borne in mind in measuring the term manufacture, when used with reference to such articles, that the only manufacture to which artificial flowers, grasses, etc., are subjected is a manufacture into precisely such articles; for that is the condition of ultimate consumption. The testimony is uniform that each and every one of these illustrative exhibits is the subject of artistic manipulation in accordance with a design controlled by the seasons and fashions, and which makes the composite value of the completed article greater than the aggregate integral values of its components. While the line of demarcation between a paquet and bouquet of artificial flowers branched, assembled, and bound in place and shape after a particular design by metal wire and any ornamental flower is very narrow and is the work of small labor and cost, it is nevertheless the same and only line of demarcation which distinguishes the classification between more expensive wreaths, pompons, and other admittedly manufactured articles. It is not for the court to ignore the principles of construction and accepted lines of demarcation because

thereby an undue advantage accrues to the importer in a particular case by reason of a slight differentiation.

The stability and certainty of business enterprise is dependent in no class of cases more than in customs cases, where minute points of distinction abound, upon a stable adherence by the courts to plain, unmistakable, and well-settled rules of distinction regardless of peculiar consequences in exceptional or particular cases. It is the better part of wisdom, and indeed vital to business undertakings, that distinctions of law and rules of decision be fixed and invariable, that the business world may understand and know upon what lines they may transact business, and that in their business transactions they will not be visited by unforeseen and harsh results.

In the particular cases the schedule of protests embraced within the petition for review in this court includes six protests. These protests, it is stated in the record, cover numerous invoices.

. We do not think the testimony of the importers' representative that the 10 samples introduced cover the entire invoices sufficiently accurate for reliquidation. This is particularly true in view of the fact that upon cross-examination, and careful examination of some of the invoices, the same witness testified that there were many items on these invoices covered by these protests and decision of the board which were not represented by these samples, but which, as he stated, were individual artificial flowers, leaves, buds, etc. The principle of the Downing case, *supra*, applies only to those individual flowers, buds, leaves, wreaths, etc., which had been manufactured into articles ready for ultimate use as above stated and which in these cases have taken a new name, such as "paquets," "wreaths," etc.

The lists, which were prepared by the witness under the direction of the board, related only to the invoices covered by protests 358438 and 358439, and are marked Exhibits 1 and 2 in the record. The witness, however, further testified that certain indicated numbers upon the invoices were represented by certain of these illustrative exhibits, for example, Exhibit H represents item 3288 and Exhibit J represents item 3196.

We think that the merchandise covered by these invoices, which is represented by these illustrative samples, or any of them, is properly dutiable as manufactures in part of metal, as claimed by the protestant, but in view of the record and the failure of the importers to establish the items upon some of the invoices represented by such samples and exhibits reliquidation can not proceed further than the items which have been positively identified and proven as above stated, the decision of the board as to these items is reversed. As to all other items it is affirmed for lack of sufficient testimony to overcome the presumption of correctness attending the collector's decision.

*Modified.*