UNITED STATES *v*. MARSHALL FIELD & Co. (No. 3129)[1]

United States Court of Customs and Patent Appeals, April 2, 1929

*Charles D. Lawrence,* Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.
*James W. Bevans* for appellee.

[Oral argument December 14, 1928, by Mr. Carter]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

GRAHAM, Judge, delivered the opinion of the court:

The appellee imported cotton and silk corsets on two occasions, under the Tariff Act of 1922. In both cases the goods were classified by the collector at Chicago under paragraph 1430 of said act as articles in part of braid at 90 per centum ad valorem. It is not claimed that any part of the corsets is composed of braid except the lacings. These lacings are about 72 inches in length and three-fourths of an

---

[1] T. D. 43309.

inch in width, are composed in chief value of silk or cotton, according to the material of the corsets with which they are to be used, and are concededly made of braid, with metal tips. The importer protested, claiming the silk goods should be classified under the proper provision for wearing apparel composed wholly or in chief value of silk, under paragraph 1210, and the cotton goods under the provision for wearing apparel composed wholly or in chief value of cotton, under paragraph 919 of said act. The trial court sustained the protests, giving as a reason for so doing the following:

A sample of the so-called braid laces was admitted in evidence, which consists of a corset lacing, approximately 1 inch in width and 72 inches in length and having metal tags at either end. It will thus be observed that the corsets in question are not made in part of braid that had a separate and distinct existence as braid at the time it became a part of the corsets, but are made in part of an article which, by the addition of the metal tags, or tips, had been changed from the condition of braid to an article known by an entirely different name and which was designed for a specific use. *Nicholas Hemance* v. *United States*, T. D. 41273; *United States* v. *Macy & Co.*, 7 Ct. Cust. Appls. 8.

The Government has appealed.

The statutes involved are as follows:

1430. * * * braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine; and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles; all the foregoing, finished or unfinished * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this act, when composed wholly or in chief value of yarns, * * * 90 per centum ad valorem; * * *.

1210. Clothing, and articles of wearing apparel * * * composed wholly or in chief value of silk, and not specially provided for, 60 per centum ad valorem.

919. Clothing and articles of wearing apparel * * * composed wholly or in chief value of cotton, and not specially provided for, 35 per centum ad valorem.

Our first inquiry is as to the correctness of the ratio decidendi of the trial court. As we understand this holding, the court below is of opinion that if the corset lacings, concededly parts of the corsets, are themselves separate commercial entities, even though made in part of braid, the corsets can not be considered to be made in part of braid but are made in part of corset lacings. It is assumed, in the opinion of the court below and in the argument of counsel, that if the braid in question here were imported by itself or as a part of a corset it or the article to which it might be attached would come within the purview of said paragraph 1430. The only issue is as above stated. Unfortunately, this view, however reasonable it may seem to be, is not in conformity with the uniform trend of authority in customs cases for many years. The fact that a component part of a manufactured article may be in itself a manufacture has never been considered as a limitation when ascertaining what the component materials of the

manufactured article may be. There are many adjudged cases on the subject. A few, only, need be adverted to.

In *Aloe et al.* v. *Churchill*, 44 Fed. 50, the Circuit Court of the Eastern District of Missouri had under consideration certain opera glasses having metal frames. It was claimed the glasses were dutiable as "articles * * * composed * * * in part of metal" under the last paragraph of Schedule C of the Tariff Act of March 3, 1883. The court held that the goods were so dutiable, irrespective of whether the frames were of chief value or not. *Seeberger* v. *Schlesinger*, 152 U. S. 581, also involved opera glasses, classified as manufactures in part of metal under said Schedule C, and claimed by the importer to be manufactures of shell under Schedule N of the same act. The court held the glasses to be properly classified.

This court, in *United States* v. *Downing*, 1 Ct. Cust. Appls. 337 T. D. 31434, passed upon the dutiable status of certain wreaths made of artificial flowers composed of wax, cotton, and tin, and fastened together with wire. These were classified as artificial or ornamental leaves, etc., under paragraph 425 of the Tariff Act of July 24, 1897, and were claimed by the importer to be dutiable as articles in part of metal under paragraph 193. of that act. The importer's claim was sustained. Similar articles and a similar holding are found in *Gage Bros.* v. *United States*, 2 Ct. Cust. Appls. 427, T. D. 32174.

In *United States* v. *Didier-March Co.*, 2 Ct. Cust. Appls. 436, T. D. 32198, certain machines composed of stoneware and metal, stoneware being the component material of chief value, were classified as manufactures of stoneware under paragraph 96 of the Tariff Act of July 24, 1897, and were claimed, *inter alia*, as articles in part of metal, under paragraph 193 of said act. This claim was sustained by the court, the court saying, in part:

It appears from undisputed evidence that the exhausters are composed of stoneware and iron and that stoneware is the component material of chief value. The iron couplings and screws which connect or hold together the stoneware parts, however, are beyond debate substantial and material constituents of the machines, and that is enough, in our opinion, to bring them within the terms of paragraph 193, inasmuch as they are not otherwise specially provided for. *Seeberger* v. *Schlesinger*, 152 U. S. 581, 587; *United States* v. *Downing*, 1 Ct. Cust. Appls. 337, T. D. 31434.

*United States* v. *Park & Tilford*, 3 Ct. Cust. Appls. 350, T. D. 32907, involved night lights, composed of tapers, having a metal plate covering the bottom of the wick. The court held that the merchandise should have been classified under paragraph 199 of the Tariff Act of August 5, 1909, as a manufacture in part of metal. A similar case was *United States* v. *American Import Co.*, 3 Ct. Cust. Appls. 361, T. D. 32912. In *United States* v. *Borgfeldt & Co.*, 3 Ct. Cust. Appls. 408, T. D. 32990, night lights were also involved. Here, however, in addition to a metal raft to hold the wick, there was a

small pair of metal tongs with each article. The goods were held to be dutiable as manufactures in part of metal under paragraph 199 of said act of 1909.

In each of the cases cited metal components which were in themselves commercial entities were involved. The fact that these metal components were wire or tongs or caps or other manufactures did not prevent the imported articles of which they were parts from being considered composed in part of the metal of which these components were made. To hold to the contrary would establish an extremely harsh rule, and would entail, in each case, under the particular language in issue here, an examination as to whether the braid involved was manufactured to any degree before being used on the fabrics or articles being classified. For example, assume an article of women's clothing having a braided collar and cuffs, which collar and cuffs had been separate commercial entities, having distinctive names, and being utilizable for many purposes, and which were thereafter and before importation attached to the article of clothing. Under the argument made here by the importer the article of clothing could not be treated as made in part of braid, but, rather, as made in part of a collar and cuffs. We are convinced no such meaning was intended.

A case proceeding along somewhat similar lines is *United States* v. *International Forwarding Co.*, 15 Ct. Cust. Appls. 198, T. D. 42235. Here woolen blankets were involved. It was claimed that these were woven fabrics of wool. The court held that they had passed beyond the fabric stage and were blankets, but not being the blankets provided for by law were classifiable as manufactures of wool. Here, it will be observed, a separate commercial entity, namely, a woven fabric, intervened between the component material wool and the finished product, a blanket; however, the finished product was a manufacture of wool.

In *Bough* v. *United States*, 14 Ct. Cust. Appls. 60, T. D. 41575, umbrellas of paper were imported having bamboo ribs. The ribs, before being attached to the umbrella, were finished commercial entities. Nevertheless, the umbrellas were held to be manufactures in part of bamboo. Nor would it have made any difference in the result, however much these ribs had been manufactured or whether composed of several materials or not if, in fact, bamboo was one of them.

On examination it will be found there is nothing in *Nicholas Hemance* v. *United States*, T. D. 41273, 48 Treas. Dec. 605, and *United States* v. *Macy & Co.*, 7 Ct. Cust. Appls. 8, T. D. 36256, that conflicts with this view or leads to a different conclusion. In *United States* v. *Macy, supra*, certain "clo-clo braids" were involved.

These were dress trimmings. The court found that each article was composed of a cord having pieces of lead thereon at regular intervals and that the covering was braided or woven upon the cord after the lead had been molded thereon. The court then observed:

> The covering, then, never had the entity of braid; it never had an independent, separate existence as an article or material; it never was designed to be used for trimming, for ornamentation, or for binding; it was never either a flat band or tape, nor was it a tubular tape or braid. Its first appearance was in the completed article before us, and it never had any other existence.

Another case, not cited by the court below, along similar lines, is *Western Blind & Screen Co.* v. *United States*, 9 Ct. Cust. Appls. 68, T. D. 39942. Cotton ladder tapes were in question there and were claimed to be classifiable as cotton tapes. The court held, in part:

> Now, if we assume that both the long and the short pieces, above described, might be, if separately produced, regarded as fabrics within the meaning of paragraph 262, their subsequent combination to produce ladder tapes would seem to be a manufacture of such fabrics, but the fact here is that their entity as such separate fabrics has never existed. In their first appearance they were fastened together, and they have ever since so remained.

A similar case is *Hemance* v. *United States, supra.* Wilton rugs having fringes which were a part of the rugs, made in weaving, were held not dutiable under paragraph 1430 of the Tariff Act of 1922 as articles made in part of fringes, the finding being that such fringes never had a separate entity as such. The rugs were hence dutiable as Wilton rugs under paragraph 1117 of said act.

The reasoning of these cases is sound, but it can not be applied here. The collector returned the corsets involved here for duty under said paragraph 1430 as made in part of braid. There is nothing in the record to show how these lacings were manufactured, nor can an inspection of the official sample disclose this to the court. Under the well-known rule, too well understood to require the citation of authorities, it will be presumed that the collector, in the absence of some showing to the contrary, found every fact to exist that was necessary to sustain his classification. This being the legal presumption, the collector found that the braid, as braid, had a separate entity before being made into laces. If this was not the fact, the importer had ample opportunity to establish the truth in this regard.

We are therefore unable to agree with the trial court in its view of the point of law suggested.

These conclusions seem to dispose of the errors here complained of. There is, however, another suggestion made by counsel for appellee which may be briefly referred to.

It is claimed that a consideration of said paragraph 1430, together with other paragraphs of said act, will lead to the conclusion that it was not intended to include utilitarian articles of braid within the

scope of said paragraph 1430, but only such as are ornamental in character and of the variety generally utilized for trimmings. Even if this contention were meritorious, which we do not find it necessary to pass upon here, there is nothing either in the evidence or in the character of the sample before us to indicate that the particular braids involved· here are not ornamental in character and of the variety generally used for trimmings. In view of the state of facts apparent on this record, therefore, no issue of law can arise on this point.

The judgment of the United States Customs Court is therefore *reversed*.