UNITED STATES *v.* M. BERNSTEIN & SONS (No. 3402) [1]

United States Court of Customs and Patent Appeals, April 27, 1931

*Charles D. Lawrence,* Assistant Attorney General (*James R. Ryan,* special attorney, of counsel), for the United States.

*Barnes, Richardson & Halstead* (*Samuel M. Richardson* of counsel) for appellee.

[1] T. D. 44895.

**60**

[Oral argument April 3, 1931, by Mr. Ryan and Mr. Richardson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:[1]

This is an appeal from a judgment of the United States Customs Court sustaining in part a protest of appellee against the classification and assessment for duty of certain merchandise by the collector of the port of New York.

The merchandise involved consists of dogskins, dressed. They were assessed for duty at 25 per centum ad valorem as "furs dressed on the skin" under the provisions of paragraph 1420 of the Tariff Act of 1922.

Several claims were made in appellee's protest, but the one relied upon in the court below and here is the claim that the merchandise is dutiable by similitude to plates and mats of dogskin under said paragraph 1420 at 10 per centum ad valorem.

Said paragraph 1420 reads as follows:

PAR. 1420. Furs dressed on the skin, excepting silver or black fox furs, not advanced further than dyeing, 25 per centum ad valorem; plates and mats of dog and goat skins, 10 per centum ad valorem; manufactures of furs, excepting silver or black fox, further advanced than dressing and dyeing, prepared for use as material, joined or sewed together, including plates, linings, and crosses, except plates and mats of dog and goat skins, and articles manufactured from fur, not specially provided for, 40 per centum ad valorem; silver or black fox skins, dressed or undressed, and manufactures thereof, not specially provided for, 50 per centum ad valorem; articles of wearing apparel of every description partly or wholly manufactured, composed wholly or in chief value of hides or skins of cattle of the bovine species, or of dog or goat skins, and not specially provided for, 15 per centum ad valorem; articles of wearing apparel of every description wholly or in part manufactured, composed wholly or in chief value of fur, not specially provided for, 50 per centum ad valorem.

The lower court in its opinion stated:

There is such a wide variance of opinion among the witnesses as to whether dressed dogskins are or are not included within the term "furs dressed on the skin," that there can not be said to be in the fur trade a definite, uniform, and general meaning different from the ordinary meaning as to what may be included in that term, but the one fact on which the witnesses were practically agreed was that the uses of dressed dogskins and plates and mats of dogskins are identical.

We are convinced that it was not the congressional intent that skins such as these, which, as imported, are but material for use in the manufacture of garments, should pay 25 per centum duty, while plates and mats made from the same kind of skins are subject to duty under an *eo nomine* provision at only 10 per centum duty. See our decision G. A. 7569, T. D. 34493, involving a kindred issue.

Our conclusion is that the claim for duty at 10 per centum ad valorem under the provision for "plates and mats of dogskins" in paragraph 1420, by virtue and under the application of the similitude clause in paragraph 1460, *supra*, is well founded, and it is therefore sustained. This conclusion is supported by the long-continued practice and congressional sanction hereinbefore detailed. Judgment will issue accordingly.

---

[1] See opinion on rehearing, p. 242.

The Government contends that the dogskins in question are "furs dressed on the skin" within the meaning of said paragraph 1420, and that therefore the similitude clause of paragraph 1460 is not applicable; that appellee failed to establish commercial designation excluding said merchandise from the provision "furs dressed on the skin," and that the doctrine of long-established administrative practice has no application to the issue herein.

Appellee contends that the testimony produced upon the trial establishes that there was a commercial understanding in the wholesale fur trade of the United States of the term "furs dressed on the skin" that excluded the merchandise here involved; that a continued, uninterrupted administrative practice, affirmed by judicial decision, of assessing dressed dogskins at 10 per centum ad valorem by similitude to plates and mats of dog and goat skins, from March 6, 1914, to November 19, 1927, has been proven; and that Congress, in the enactment of said paragraph 1420, sanctioned said administrative practice. Appellee further contends that the similitude of dressed dogskins to dogskin mats is established by the evidence.

The first question for consideration is whether dogskins are "furs" within the meaning of that word as used in said paragraph 1420. We think this has been definitely settled in the case of *Transport Co.* v. *United States*, 15 Ct. Cust. Appls. 89, T. D. 42159, where, in construing said paragraph, the court, speaking through Judge Hatfield, said:

The provision for "manufactures of furs, excepting silver or black fox, further advanced than dressing and dyeing, prepared for use as material, joined or sewed together, including plates, linings, and crosses, *except plates and mats of dog and goat skins*, and articles manufactured from fur," clearly indicates that the Congress recognized that "plates and mats of * * * goatskins," were manufactures of goat furs dressed on the skin and advanced further than dressing and dyeing, and would be covered by this provision unless expressly excepted therefrom. [Italics quoted.]

While it is true that the classification of kid skins was there in issue and not dogskins as in the case at bar, it is clear that the construction given in said *Transport Co.* case of paragraph 1420 applies to dogskins equally with goatskins. If plates and mats of goatskins are manufactures of fur, as this court said they were by reason of the language of the paragraph, then plates and mats of dogskins are also manufactures of fur, and if they are manufactures of fur it must follow that the skins from which they are made are fur skins.

The opinion in said case reviews a large number of cases, including the case of *Allum et al.* v. *United States*, 4 Ct. Cust. Appls. 332, T. D. 33526, in which it was held that dogskins with the hair on, in the form of mats, were dutiable as manufactures of furs under paragraph 439 of the Tariff Act of 1909.

In the case of *Ayres, Bridges & Co. et al.* v. *United States*, 8 Ct. Cust. Appls. 87, T. D. 37201, also cited in the *Transport Co.* case, there was involved the consideration of paragraph 348 of the Tariff Act of 1913, the pertinent portion of which reads as follows:

348. Furs dressed on the skin, not advanced further than dyeing, 30 per centum ad valorem; plates and mats of dog and goat skins, 10 per centum ad valorem; manufactures of furs, further advanced than dressing and dyeing, when prepared for use as material, joined or sewed together, including plates, linings, and crosses, except plates and mats of dog and goat skins, and articles manufactured from fur not specially provided for in this section, 40 per centum ad valorem; * * *

The merchandise involved in said case consisted of certain sheep-skins used as ordinary fur skins are used. In its opinion the court said:

Paragraph 348 of itself, we think, evidences that Congress recognized that dressed skins of the dog and goat in the form of plates and mats are to be regarded as a kind of fur and that plates, linings, and crosses of skins of other animals with hair or short wool thereon and without limitation as to the kind of animal may likewise be so considered.

We think the construction of paragraph 1420 of the Tariff Act of 1922 given by this court in the *Transport Co.* case, *supra*, is controlling of the issue here involved, especially in view of the construction given to paragraph 348 of the act of 1913 in the *Ayres, Bridges & Co.* case, *supra*, and we can not here hold that dogskins are not fur skins within the meaning of said paragraph 1420 without overruling the construction given said paragraph in the *Transport Co.* case.

With this construction it is clear to us that the evidence produced upon the trial in the court below, relating to a commercial meaning of "furs" or "furs dressed on the skin," excluding dogskins, is imma-terial. However, assuming that it is proper to consider such testimony, the lower court has found that the testimony in the case does not establish that there is in the fur trade a definite, uniform, and general meaning of the phrase "furs dressed on the skin" different from its common meaning and that dogskins are excepted from the term "furs dressed on the skin," and after carefully considering the evidence in the record we can not say that such finding is clearly against the weight of the evidence.

Assuming, without deciding, that the testimony of appellee's wit-nesses, if not rebutted, is sufficient to establish a commercial designation of the phrase "furs dressed on the skin" that excluded dogskins, we find that three witnesses for the Government testified to the contrary.

The witness Bleistein testified that he was an importer of furs from China and Japan and had been so engaged for 20 years; that he had bought and sold dogskins in wholesale quantities; that he was familiar-

with the phrase "furs dressed on the skin," and that during his entire experience that term included dogskins.

The witness Ullmann testified that he had been in the fur business for 30 years and had handled furs from all over the world in wholesale quantities, buying them abroad and selling them in the United States; that he had been dealing in dogskins since 1901; that he was familiar with the phrase "furs dressed on the skin," and that during his entire experience such term included dogskins.

The witness Lang testified that he was a buyer of raw and dressed skins from China and Japan and sold them in wholesale quantities in the United States, and had been so engaged for 20 years; that during his entire experience dogskins were included within the phrase "fur skins."

The testimony of the Government's witnesses, Fox and Sack, supports, we think, the contention of appellee.

Of course, testimony rebutting appellee's proof of commercial designation is competent and of probative force, if credible, although not of a character required to establish commercial designation.

Assuming that proof of commercial designation was material, the burden was upon appellee to establish by a preponderance of evidence that prior to September 21, 1922, in the fur trade and commerce of the United States, there was a definite, uniform, and general meaning of the phrase "furs dressed on the skin" different from its common meaning, and that such meaning excluded dogskins from such phrase. Negative testimony of those engaged in such trade to the effect that in their trade and in their understanding dogskins were not excluded from the phrase "furs dressed on the skin" was competent evidence to rebut appellee's testimony that the meaning of said phrase claimed by it was definite, uniform, and general, and, if believed by the court, such evidence was sufficient to defeat appellee's claim of commercial designation.

This court, in the case of *Jas. Akeroyd & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 440, T. D. 42641, said:

Commercial designation is a thing often claimed in customs litigation and rarely established. The rule of commercial designation was never intended, as has been often said, to apply to cases where some portion of the trade use a certain trade practice or nomenclature, but was intended to apply to cases where the trade designation is so universal and well understood that the Congress, and all the trade, are supposed to have been fully acquainted with the practice at the time the law was enacted. There was never any other reason for the rule.

The rule is well established that the decision of the court below on a question of this kind will not be disturbed unless clearly contrary to the weight of the evidence, and in weighing the evidence, consideration will be given to the fact that the lower court had the opportunity of hearing the witnesses testify and observing their de-

meanor upon the stand, a privilege which we have not had. *La Manna, Azema & Farnan* v. *United States,* 14 Ct. Cust. Appls. 289, T. D. 41908; *United States* v. *Borgfeldt,* 1 Ct. Cust. Appls. 255, T. D. 31279.

Therefore, even if proof of commercial designation was proper in the case at bar, we can not hold that the finding of the court below, holding that it had not been established, is clearly contrary to the weight of the evidence.

We may add that while the testimony in the record is conflicting upon the question of commercial designation, the testimony of all the witnesses shows that dogskins are used for the same purposes that many other furs are used and serve several purposes of fur.

Appellee further contends that long administrative practice, arising under the act of 1913 and sanctioned by legislative approval, requires that the merchandise involved should be assessed for duty by similitude to dogskin mats under the second provision of said paragraph 1420.

The first answer to this contention is that if the merchandise consists of furs dressed on the skin within the meaning of said paragraph 1420, as we hold it is, the similitude clause of paragraph 1460 can not be applied.

Secondly, paragraph 1420 of the act of 1922 is materially different from paragraph 348 of the Tariff Act of 1913, under which such administrative practice was adopted, in that an exception was made in the first and third provisions of said paragraph 1420 of silver or black fox furs, further indicating that all furs dressed on the skin, not advanced further than dyeing, other than those so excepted, should be included in the first provision.

In view of the change in the statute above noted the administrative practice relied upon by appellee did not receive legislative approval and can not be considered here, even if the subject was one where the doctrine of administrative practice and legislative approval was applicable.

Appellee argues with much force the incongruity of assessing dogskins at a higher rate of duty than dogskin mats made from dogskins. This incongruity was considered in the *Transport Co.* case, *supra,* with reference to goatskins. We there said:

The classification of furs of kid skins at a higher rate of duty than that provided for manufactures of such furs and for articles made therefrom may seem incongruous, but many seeming incongruities appear in tariff statutes.

In view of the construction given by this court to paragraph 348 of the Tariff Act of 1913, which is the predecessor of paragraph 1420 of the act of 1922, in the case of *Ayres, Bridges & Co.* v. *United States, supra,* and the construction given said paragraph 1420 in the case of *Transport Co.* v. *United States, supra,* we must reverse the judgment

of the court below as to the classification of the merchandise here involved and sustain the classification made by the collector.

The similitude clause of paragraph 1460 can not be applied to the merchandise here involved for the reason that it is dutiable under the first provision of paragraph 1420.

The questions here involved have heretofore received careful consideration by this court, and it is to the interest of a proper administration of our customs laws and of importers that the conclusions there reached should not be overruled unless clearly shown to be erroneous.

In the case of *Gage Bros. & Co.* v. *United States*, 2 Ct. Cust. Appls. 427, T. D. 32174, this court said:

> The stability and certainty of business enterprise is dependent in no class of cases more than in customs cases, where minute points of distinction abound, upon a stable adherence by the courts to plain, unmistakable, and well-settled rules of distinction regardless of peculiar consequences in exceptional or particular cases. It is the better part of wisdom, and indeed vital to business undertakings, that distinctions of law and rules of decision be fixed and invariable, that the business world may understand and know upon what lines they may transact business, and that in their business transactions they will not be visited by unforeseen and harsh results.

While conceding that there is much force in the able argument of appellee's counsel, we are not convinced that the views expressed in said *Transport Co.* case respecting the construction of said paragraph 1420 are erroneous, and we hold that they control the determination of the issue here involved.

The judgment of the United States Customs Court is *reversed*.

GARRETT, J., dissents.