UNITED STATES *v.* F. W. WOOLWORTH Co. (No. 3929)[1]

United States Court of Customs and Patent Appeals, March 2, 1936

*Joseph R. Jackson*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[1] T. D. 48212.

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellee.

[Oral argument December 6, 1935, by Mr. Jackson and Mr. Sharretts]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division.

Merchandise, consisting of bell-shaped metal articles, suspended from ornamental metal stands, and metal mallets for striking the bell-shaped articles, was assessed for duty by the collector at the port of New York as entireties, at 50 per centum ad valorem under paragraph 364 of the Tariff Act of 1930, which reads:

PAR. 364. Bells (except church and similar bells and carillons), finished or unfinished, and parts thereof, 50 per centum ad valorem.

The importer protested, claiming that the imported articles were not dutiable as assessed by the collector, but were properly dutiable at 45 per centum ad valorem as articles composed of metal, under paragraph 397 of that act, the pertinent part of which reads:

PAR. 397. Articles or wares not specially provided for * * *; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

On the trial in the Customs Court, counsel for the importer submitted the case on samples of the articles in question, Exhibits 1 and 2, "and the record as it is made up."

No evidence was submitted by the Government.

In its decision holding the involved merchandise to be dutiable as claimed by counsel for the importer, the trial court, among other things, said:

A sample, admitted in evidence as exhibit 1, consists of an ornamental stand from which is suspended a metal bell-shaped article. There is also a small metal hammer, the obvious purpose of which is to strike the bell-shaped article.

From an examination of the sample it is our opinion that the imported article, viewed as an entirety, which undoubtedly it is, must be classified as something more than a bell. It is an article composed in part of a bell. The stand is no more a part of the bell than the bell is a part of the stand. It is a combination of bell and stand used as an entirety.

The court then cited, and quoted from, the decisions in the following cases: *United States* v. *Downing*, 1 Ct. Cust. Appls. 337, T. D. 31434; *Ellis* v. *United States*, 15 Ct. Cust. Appls. 110, T. D. 42187; *United States* v. *Sutherland International Despatch et al.*, 21 C. C. P. A. (Customs) 264, T. D. 46790, and said:

* * * Merely in the interest of plain accuracy of description the word "bell" should be qualified. To convey any fair conception of the article some expression

like "bell on stand" or "stand with suspended bell" would be necessary. As an entirety the exhibit is made up of three separate items, a stand, a bell, and a hammer. Plainly, then, it is more than a bell, and we so find.

Counsel for the respective parties are in agreement that the involved articles are dutiable as "entireties," as assessed by the collector, and as held by the trial court.

Accordingly, assuming for the purpose of this decision that the articles are dutiable as "entireties," the sole issue before us is whether they are dutiable as bells, and parts thereof, under paragraph 364, *supra*, or as articles of metal, under paragraph 397, *supra*.

The frames of the stands from which the bell-shaped metal articles are suspended are formed, in part, of figures somewhat resembling a stork, and the ends of the shafts of the mallets are bent so that they may be hung on the metal stands.

The imported articles were invoiced as "Stork Gongs."

There is no evidence of record as to the name by which they are known and sold in this country.

The articles, although undoubtedly novelties, are evidently designed to be used as call-bells, signal-bells, or gongs.

A "bell" is defined by the lexicographers as follows:

A hollow metallic instrument which gives forth a ringing sound, generally of a musical quality, when struck with a clapper, hammer, or other appliance. Its usual shape resembles that of an inverted cup with a flaring rim. If the bell is stationary, it is often made saucer-shaped, and in this case is commonly termed a *gong*. Bells of this form are generally used as call-bells or signal-bells. Bells are made for many purposes and in a great variety of forms and sizes. They usually consist of an alloy of copper and tin, called bell-metal * * *. (The Century Dictionary and Cyclopedia.)

A hollow metallic vessel, usually shaped somewhat like a cup with a flaring mouth, containing a clapper or tongue, and giving forth a ringing sound on being struck. Bells are usually made of the alloy *bell metal*. The common heraldic bell is the hawk's (globular) bell; the ordinary bell is distinguished as a *church bell*. (Webster's New International Dictionary.)

Illustrations of various types of bells appear in the latter authority, such as the electric bell, hand bell, jingle bell, cow bell, tubular bells for clock chimes, factory bell, and coil gong for clocks. Each of those illustrations shows a bell with several parts, some of which are quite elaborate and are used not only for the purpose of suspending the hollow metallic vessel, but also for causing it to function as a bell.

A gong is a kind of bell, and is sometimes referred to as a "stationary bell" or as a "gong bell." See the definition of "bell," The Century Dictionary and Cyclopedia, *supra*, and the definition of "gong," Webster's New International Dictionary.

With the exception of the rate of duty, which was changed in conference from 70 to 50 per centum ad valorem, the provisions of paragraph 364, *supra*, were inserted in H. R. 2667, which later

became the Tariff Act of 1930, by the Committee on Finance of the Senate.

We quote from the report of the committee, relative to that paragraph:

The exception of church bells and carillons from the provisions of the paragraph is intended to limit its application to metal bells of common commercial usage such as bicycle bells, doorbells, annunciators, and gongs. Carillons are specially provided for in paragraph 1541, whereas church bells are not now specially provided for but are covered by the provision of paragraph 398 for manufactures of metal not specially provided for.

It will be observed that the report refers, among other things, to "bicycle bells, doorbells, annunciators, and gongs," as coming within the provisions in question. It is obvious, therefore, that the Congress did not intend to limit the provisions for bells, and parts thereof, to a mere "hollow metallic vessel, containing a clapper or tongue, and giving forth a ringing sound on being struck," but, on the contrary, intended to include therein all kinds of bells and gongs, and parts thereof, except those expressly excluded therefrom.

In the case of *United States* v. *Downing, supra*, this court held that bridal wreaths, made of wax, cotton, tin, wire, and other metal, were something more than mere leaves, flowers, and stems, or parts thereof, of whatever material composed.

In the case of *Ellis* v. *United States, supra*, it was held that a light spear buoy, consisting of "hollow, amphora-shaped, water-tight metal float, equipped at the top with a tube having lamp supports and at the bottom with a device for attaching anchor chains," was something more than a mere "cylindrical and tubular" tank or vessel "for holding gases, liquids, or other material," and, accordingly, not dutiable as such.

In the case of *United States* v. *Sutherland International Despatch et al., supra*, we held that certain brass channels, known as "silent window channels," the inner surfaces of which were lined with felt, were dedicated to a use different from that of ordinary brass channels, and were, therefore, new articles and something more than the brass channels intended by the Congress to be included within the provisions of paragraph 381 of the Tariff Act of 1930.

We are of opinion that, in view of the legislative history of paragraph 364, articles of the character of those here involved were intended by the Congress to be included within the provisions of that paragraph, and that the decisions in the cases hereinbefore referred to do not warrant a holding to the contrary. We are constrained, therefore, to disagree with the conclusion reached by the trial court.

The judgment is *reversed*.