C. J. Tower & Sons *v.* United States (No. 4931) [1]

United States Court of Customs and Patent Appeals, November 17, 1958

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellant.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh*, trial attorney, of counsel), for the United States.

---

[1] C.A.D. 692.

Before O'Connell, Acting Chief Judge, and Worley, Rich, and Martin, Associate Judges

O'Connell, Acting Chief Judge, delivered the opinion of the court:

█ This is an appeal from the judgment of the United States Customs Court, Second Division, C.D. 1872, overruling the importer's protest and sustaining the collector's classification of the instant merchandise as ferrosilicon, containing 8 per centum or more of silicon, and less than 30 per centum, dutiable at one cent per pound under paragraph 302(i) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. The actual silicon contents of the two importations of ferrosilicon in controversy are 16.10 and 16.57 per centum, respectively.

It is the claim of the importer, appellant here, that the merchandise is properly free of duty under paragraph 1664 of the Act, as a metallic mineral substance in a crude state.

Appellant, among other things, further claims in its protest that the assessment of duties made herein by the Collector of Customs is illegal and void "under the rules relating to the ordinary meaning of words, and the commercial designation of the merchandise," as defined by the language of Congress in the enactment of the Tariff Act of 1930, and the amendments thereto.

█ In the interpretation of that act, it is of course, the function of the court to ascertain the intent of Congress. One of the rules to be followed in discovering that intent is the rule of commercial designation, which time and again has been described by the courts as a wise rule "often claimed in customs litigation and rarely established." *United States* v. *Fung Chong Co.*, 34 CCPA 40, C.A.D. 342; *Jas. Akeroyd & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 440, T. D. 42641.

█ What the rule is and where it came from was thus defined in *United States* v. *Stone & Downer Co. et al.*, 16 Ct. Cust. Appls. 82, 85, T.D. 42732:

Soon after the organization of this court we held, following *Two Hundred Chests of Tea*, 22 U.S. 428, and *Cadwalader* v. *Zeh*, 151 U.S. 176, that *where words were used in a Tariff Act to designate particular kinds of goods, having a general, definite, and uniform signification in our trade and commerce [throughout the country], different from their ordinary meaning, the commercial meaning must prevail,* citing *United States* v. *Borgfeldt*, 1 Ct. Cust. Appls. 255, T.D. 31279. (Italics supplied.)

We also there observed, page 85:

But this rule has its limitations. If, in the consideration of a statute, it appears, from its language or from its context, from the legislative history of the act, or from other material facts, that it was the intent of the legislative body to restrict the meaning of the words used to their common meaning, then any commercial meaning which the words employed in the act may have must yield to the legislative intent, which is, after all, the major guide to construction.

■ One of the rules of this court in the construction of the provisions of the Tariff Act is however that resort may not be had to extraneous matters to create an ambiguity in the language of the statute where none otherwise exists. *Universal Transcontinental Corp.* v. *United States*, 40 CCPA 54, 58; *United States* v. *American Trucking Ass'ns.*, 310 U.S. 534, 542.

The pertinent text of the respective paragraphs reads as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 302(i) _____ | Ferrosilicon:<br>    Containing 8 per centum or more of silicon and less than 30 per centum__ | 1¢ per lb. on the silicon contained therein. |
| Par. 1664____ | Tariff Act of 1930 (Free List):<br>    Metallic mineral substances in a crude state, such as drosses, skimmings, residues, brass foundry ash, and flue dust, not specially provided for. | |

As shown by the testimony of the importer's witness, MacDonald, the merchandise, an abrasive furnace ferrosilicon, is a by-product of an electric furnace process of manufacturing a crude abrasive aluminum oxide, known as "Aloxite," from bauxite ore. The steps of the process are not important here, but it is to be noted that no attempt is made to control the composition of the abrasive furnace ferrosilicon, and that such composition may vary with the type of ore being used. It is not in dispute, however, that the silicon content of the merchandise is in the neighborhood of sixteen percent, and thus is within the range of 8 to 30 percent provided for by paragraph 302(i), supra.

Appellant does not deny that the merchandise falls within the common meaning of the term "ferrosilicon," but contends that it is excluded from the commercial meaning of that term as understood in the trade and commerce of the United States on and prior to June 17, 1930, the date of enactment of the Tariff Act of 1930, as well as on and prior to January 1, 1939, and January 1, 1948, respectively, on which dates reciprocal trade agreements containing the term went into effect. Consequently, appellant argues, the merchandise is free from duty as a metallic mineral substance in a crude state under paragraph 1664 hereinbefore set forth.

While it appears that the merchandise falls within the broad language of paragraph 1664, it is evident that the express provision for ferrosilicon in paragraph 302(i) is more specific and will prevail

unless appellant can establish a commercial meaning of the term "ferrosilicon" which will exclude the merchandise therefrom.

The Customs Court was of the opinion that the legislative and judicial history, as well as the express language of paragraph 302(i), are such as to preclude the ascertainment of its meaning by resort to commercial designation. Accordingly, that court sustained the collector's classification without deciding whether or not such a designation had been established.

From the foregoing statement of facts it will be seen that appellant can prevail here only by establishing; first, that this is a proper case for ascertainment of the meaning of the statute involved by resort to commercial designation; and, second, that a commercial designation has been established which excludes the instant merchandise from paragraph 302(i).

It is appellant's contention that the commercial meaning of "ferrosilicon" is limited to purposely produced alloys which are controlled as to the amount of silicon and other elements, and that the term is not applicable to incidental or by-product materials.

The Customs Court, in its decision, pointed out that in *United States* v. *Tower & Sons, et al.*, 10 Ct. Cust. Appls. 155, T.D. 38401, the Court of Customs Appeals held that a metallic product containing iron and silicon, which was a by-product of the manufacture of aluminous abrasives, was classifiable as ferrosilicon, under paragraph 102 of the tariff act of 1913, rather than as a crude mineral or metallic mineral substance in a crude state under other paragraphs of that act. The silicon content of that product varied from 8.80 to 16.85 percent. While it is not shown that such a product was identical with the merchandise at bar, the two products were similar in that both were by-products rather than purposely produced materials, and that neither product was accurately controlled as to its silicon content. Accordingly, the respective products were substantially the same, so far as the grounds on which appellant relies as determining the classification thereof are concerned.

It is true that there was evidence that the material involved in the case last cited was sold commercially as ferrosilicon. But regardless of the basis on which the judgment was rendered, the decision in that case clearly holds that as of its date, May 1, 1920, the term "ferrosilicon" included not only purposely produced and controlled products, but also by-products of widely varying silicon content.

Two years later, the Tariff Act of 1922 was enacted including, in paragraph 302, provision for ferrosilicon containing various amounts of silicon from 8 to 90 percent or more. The 1913 act did not contain express provisions as to the silicon content of ferrosilicon. It is, of course, to be presumed that when Congress passed the Act of 1922 it

was cognizant of the cited Tower decision; and we agree with the Customs Court that it is significant that the lower limit of silicon content fixed in that act at 8 percent corresponds closely to the lowest amount of silicon (8.80 percent) present in the imported merchandise of Tower. The inference is clear that Congress, in 1922, agreed with the holding that an uncontrolled by-product of the manufacture of aluminous abrasives might be properly classifiable as ferrosilicon.

The Act of 1930 contained provisions for ferrosilicon similar to those of the Act of 1922, and there is no reason to suppose that any change in the meaning of that term was intended.

Moreover, as was properly noted by the Customs Court, there is no competent proof of record that ferrosilicon having a silicon content as low as 8 percent is produced by a controlled process. The importer's witness Hellwig, who was of the opinion that commercial ferrosilicon must be made "under definite specifications in a blast furnace" states that prior to June 17, 1930, there was no blast furnace ferrosilicon having a silicon content lower than about 12 percent. Under such circumstances, the express reference in the Act of 1930 to a silicon content of 8 percent raises a strong presumption that Congress did not intend to limit the term ferrosilicon to a purposely made controlled product.

We are of the opinion that the express language, as well as the judicial and legislative history of paragraph 302(i) of the 1930 Act, precludes the use of such a commercial designation as appellant seeks to establish in construing the meaning of that paragraph.

Appellant in support of its position relies on the recent decision of this court in *W. E. Sellers* v. *The Cronite Co., Inc.*, 45 CCPA 27, C.A.D. 668. In that case it was held that the doctrine of legislative ratification of judicial decisions does not extend to facts which do not appear on the face of the decisions. That rule is not in point here, however, since the only legislative ratification in question is that of facts clearly apparent on the face of the decision involved. Similarly, the statement in *Cunard Steamship Co.* v. *United States*, 22 CCPA 615, T.D. 47605, also relied on by appellant, that "Legislative ratification extends only to the precise points judicially determined" does not support the position of appellant here, since the Tower case, supra, had previously and judicially determined the point that an uncontrolled by-product may be properly classified as ferrosilicon.

Appellant further relies on our decision in *C. J. Tower & Sons* v. *United States*, 45 CCPA 43, C.A.D. 670, in which we reversed the decision of the Customs Court and held that a commercial meaning of the term "aluminum silicon" might properly be established. That decision, however, was based on our holding that the record contained

no evidence of an intention by Congress that the term in question should not be interpreted in a commercial sense. In the instant case, as above pointed out, we are of the opinion that the record and legislative history indicate a clear intention by Congress that the term "ferrosilicon" shall not be given such a limited meaning as is contended for by appellant, either by proof of commercial designation or otherwise.

The case of *United States v. C. J. Tower & Sons*, 40 CCPA 14, C.A.D. 491, cited and discussed by appellant is not in point here, since it was not contended before this court that the merchandise there involved was ferrosilicon, and the decision merely holds that such merchandise was not an alloy within the commercial meaning of that term.

The judgment of the United States Customs Court for the reasons stated is hereby *affirmed*.