951 F.2d 362
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
R.W. BECK & ASSOCIATES, et al., Plaintiff,
and
Admiral Insurance Company, Plaintiff-Appellant,
v.
CITY AND BOROUGH OF SITKA; Providence Washington Insurance
Company, Defendants-Appellees.
 No. 90-35708.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 22, 1991.
Decided Dec. 16, 1991.
 
 Before TANG, REINHARDT, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Admiral Insurance Company (hereinafter "Admiral") appeals an order from the United States District Court for the District of Alaska granting the City and Borough of Sitka's motion for summary judgment on Admiral's declaratory judgment action seeking a declaration of no coverage under the terms of insurance policies between Admiral and Sitka. We affirm the district court's ruling.
 
 
 3
 The City and Borough of Sitka (hereinafter "Sitka") owned and operated Blue Lake Dam. Sitka hired the independent engineering firm of R.W. Beck and Associates (hereinafter "Beck") to perform certain professional engineering services related to Sitka's operation of this dam. Part of the work performed by Beck required an underwater inspection of the dam. Sitka hired Alaska Aquatic Dive Center, Inc. (hereinafter "Aquatic") to perform this underwater inspection. McKinley Nicholas, an employee of Aquatic, died while performing this inspection. Nicholas' estate then filed a wrongful death action against Sitka and Beck. A jury verdict ultimately was rendered in this action which awarded the plaintiffs $3,375,000 in damages, an amount reduced by the district court on remittitur to $2,835,500. The present action concerns whether Admiral is liable for any of this amount.
 
 
 4
 A wide variety of disputes and lawsuits occurred between Beck, Sitka, and various insurance companies both prior and subsequent to the jury's verdict in Estate of Nicholas. Only a fraction of these events are relevant to this appeal. At the time of Nicholas' death, Sitka was insured under a number of insurance policies. Two of these policies are particularly relevant here: (1) a policy with Providence Washington Insurance Company (hereinafter "Providence") on which Sitka was a named insured, and (2) a policy with Admiral issued to Aquatic on which Sitka was an additional named insured. Providence retained an attorney named Randolph Hunter to represent Sitka in the Nicholas wrongful death action. Hunter subsequently tendered Sitka's defense to Admiral, and Admiral accepted this defense while reserving its right to dispute the availability of coverage. Admiral retained independent counsel chosen by Sitka to defend Sitka in the wrongful death action, and subsequently filed the present action for declaration of no coverage. Various settlement offers were made both prior and subsequent to Admiral's decision to defend Sitka, but none were accepted. Meanwhile, Sitka and Beck litigiously disputed whether Sitka was obligated to indemnify Beck or vis-a-versa, a conflict which ultimately resulted in a ruling that Sitka owed Beck contractual indemnity.
 
 
 5
 On September 20, 1989, the district court ruled that the insurance policy between Sitka and Admiral covered Sitka's liability to Nicholas as well as Sitka's contractual liability to Beck. On August 1, 1990, the district court entered final judgment in favor of Sitka on Admiral's current action for a declaration of no coverage. Admiral appeals this ruling. Admiral argues that this decision is erroneous because (1) Sitka was acting as an "engineer" and hence exclusion (b)(1) in the Admiral policy precludes coverage; (2) Beck was "primarily responsible" for Nicholas' death and hence exclusion (b)(2) in the Admiral policy precludes coverage; and (3) there exists a genuine issue of material fact concerning whether Sitka's actions towards Admiral violated a duty of cooperation, good faith, or fair dealing sufficient to preclude Sitka's recovery under the Admiral policy.
 
 I. EXCLUSION (b)(1) OF THE INSURANCE POLICY
 
 6
 Exclusion (b)(1) of the Admiral insurance policy states in relevant part that the insurance does not apply
 
 
 7
 "[i]f the insured is an ... engineer ... to bodily injury ... arising out of professional services performed by such insured, including (i) the preparation or approval of ... opinions, reports, surveys, change orders, designs or specifications, and (ii) supervisory, inspection or engineering services ..."
 
 
 8
 The district court correctly determined that this exclusion does not apply to Sitka's conduct because Nicholas' death did not result from Sitka's acts as an "engineer." Under Alaska law, which we apply in this diversity case, "the construction of an insurance contract is for the court, unless its interpretation is dependent upon the resolution of controverted facts." O'Neill Investigations, Inc. v. Illinois Employers Ins., 636 P.2d 1170, 1173 (Alaska 1981). An insurance policy is considered a contract of adhesion and is construed to provide the coverage which a lay person reasonably would have expected. See Stordahl v. Government Employees Ins. Co., 564 P.2d 63, 66 (Alaska 1977). Insurance coverage provisions are construed broadly and exclusionary provisions are construed narrowly. See Starry v. Horace Mann Insurance Co., 649 P.2d 937, 939 (Alaska 1982).
 
 
 9
 Sitka need not avail itself of these doctrinal concepts in order to prevail on its contention that Nicholas' death was not caused by Sitka's acts as an "engineer." Sitka hired Beck, an independent professional engineering firm, to provide all of the engineering services at issue here associated with the inspection of Blue Lake Dam. The hiring of Beck did not transform Sitka into an "engineer"; indeed, Sitka hired Beck precisely because its own engineers were not qualified to perform these inspections. A reasonable layperson would expect exclusion (b)(1) to apply only if Sitka itself was an engineer: Sitka is not transformed into an engineer merely because it employed staff engineers who had nothing to do with this inspection or because Sitka contracted with Beck to perform these services. The actions performed by Sitka itself which contributed to the death of Nicholas were not "professional services" in an "engineering" capacity; hence, exclusion (b)(1) does not apply.
 
 II. EXCLUSION (b)(2) OF THE INSURANCE POLICY
 
 10
 Exclusion (b)(2) of the insurance policy states in relevant part that the insurance does not apply:
 
 
 11
 "[I]f the indemnitee of the insured is an ... engineer ... to the liability of the indemnitee, his agents or employees, arising out of (i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or (ii) the giving or failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the bodily injury or property damage."
 
 
 12
 The "indemnitees" of Sitka in the present action were Beck and its employee Carson. Beck undoubtedly is an "engineer" as the term is used in exclusion (b)(2). The question thus is whether Beck's liability "aros[e] out of" the actions specified in either subsection (i) or (ii).
 
 
 13
 It is clear that Beck's liability did not result from its "preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications." These words are "terms of art," used in engineering contexts to apply to entirely different situations than the one here. Even when viewed according to their plain meaning, and wholly apart from the limited scope afforded to exclusionary clauses in insurance contracts, these terms do not apply to Beck's actions.
 
 
 14
 Instead, Beck's liability arose out of its "giving or failure to give directions or instructions" as specified in subsection (ii). This alternative exclusion, however, further requires that "such giving or failure to give" directions or instructions must be "the primary cause of the bodily injury or property damage" in order for the exclusionary clause to apply. Whatever ambiguity might result from the use of the term "arise out of" earlier in the exclusion is mooted by this additional, more restrictive, limitation on the scope of subsection (ii). This exclusion is applicable only if Beck's actions were the "primary cause" of Nicholas' death.
 
 
 15
 Sitka claims that because Admiral was in charge of Sitka's defense in the wrongful death action, and because the jury in this action explicitly found Sitka to be 50% liable for Nicholas' death and Beck to be only 40% liable, Admiral is estopped from asserting that Beck's actions were the "primary cause" of Nicholas' death. Admiral first responds that this determination does not demonstrate that Beck was less than 50% responsible for ("the primary case" of) Nicholas' death because the jury could have found that Beck and Sitka were "jointly" liable for "overlapping" acts which caused Nicholas' death. However, even if the jury believed that such joint actions occurred, it apportioned the responsibility for such joint actions to both Beck and Sitka, and this apportionment already would be reflected in its determination that Beck was only 40% responsible for Nicholas' death.[1] Hence, if the jury's determination binds Admiral, it is clear that Beck was not the "primary cause" of Nicholas' death.
 
 
 16
 Admiral, however, asserts that it is not estopped from challenging this determination--even though it was responsible for Sitka's defense in this case--because it did not have a "full and fair opportunity to litigate" this issue because Sitka's interests conflicted with Admiral's. No such conflict, however, existed during Admiral's defense. During the wrongful death action, both Admiral and Sitka desired to minimize the extent of Sitka's own responsibility for Nicholas' death and maximize the extent of Nicholas' own responsibility for his death. Despite this fact, Sitka was found 50% liable for Nicholas' death and Nicholas only 10% responsible for his death--assessments which preclude a finding that Beck was the "primary cause" of this death.[2] Admiral is bound by this determination, and exclusion (b)(2) of the insurance contract thus does not apply.
 
 
 17
 III. DUTY OF COOPERATION, GOOD FAITH, AND FAIR DEALING
 
 
 18
 Admiral finally claims that there exists a genuine issue of material fact concerning Sitka's violation of a duty of co-operation, good faith, or fair dealing towards Admiral sufficient to preclude Sitka's recovery under the insurance policy with Admiral. A thorough review of the record, however, fails to disclose any evidence sufficient to support Admiral's allegations. Admiral knew that Providence was Sitka's insurer in the early stages of the litigation, and there is no evidence that Sitka attempted to hide this fact from Admiral. Nor is there any evidence that it was Sitka, and not Providence, which engaged in the vast majority of the "duplicitous" acts complained of by Admiral. Although representatives of Providence may have had a duty to advise Sitka to settle, their duty (if any) to ensure that Providence accept these offers is an entirely different issue. If Admiral believes that representatives of Providence breached duties owed to Admiral, it may seek (and is currently seeking in another lawsuit) recovery from Providence. No genuine issue of material fact, however, exists concerning Sitka's good faith and fair dealing towards Admiral.
 
 
 19
 The decision of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 For example, if the jury believed that Beck's independent actions were 20% responsible for Nicholas' death, that Sitka's independent actions were 30% responsible, and that "joint" and "overlapping" actions were 40% responsible, it would have allocated this joint liability to each party in proportion to its responsibility for this joint action. In this example, it may have found Sitka and Beck to have been equally responsible for this joint action, and hence apportioned half of this liability ( 1/2 of 40%--20%) to each party: thus resulting in a finding that Sitka was 50% liable and that Beck was 40% liable. However these final figures were reached, they would reflect the presence of "joint" actions in the ultimate liability assessment of the jury and preclude a finding that Beck was the "primary cause" of Nicholas' death if the jury found Beck to be less than 50% responsible for this act
 
 
 [2]
 There also may have been no conflict between Admiral's and Sitka's desires concerning the responsibility of Beck because at this time it appeared that Beck would have to indemnify Sitka, and not the other way around. Sitka was not clearly responsible for indemnification of Beck until our 1987 decision in R.W. Beck & Assoc. v. City & Borough of Sitka, 812 F.2d 715 (9th Cir.1987)--three years after Nicholas' action--in which we reversed a district court judgment that Beck was responsible for Sitka's indemnification